

Ober, Grimes & Shriver, Kieron Quinn, of counsel, New York City, for plaintiff.

Healy & Baillie, John McMahon and Richard Singleton, of counsel, New York City, for defendant.

**TRANSAMERICA ICS, INC., Plaintiff,**

v.

**TUGU INSURANCE CO., LTD., Defendant.**

**No. 82 Civ. 4402 (DNE).**

United States District Court, S.D. New York.

July 19, 1984.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiff brought this action to obtain an award of money for lost equipment allegedly due from defendant under an insurance policy. Jurisdiction is based on diversity of citizenship—the plaintiff is a Delaware corporation with its principal place of business in New York engaged in leasing shipping containers, and the defendant is an insurance company with its principal place of business in Hong Kong. 28 U.S.C. §§ 1132 and 1441. Defendant has moved pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(4) for an order dismissing the complaint for lack of jurisdiction over the defendant or for *forum non conveniens.*

**1302**

## FACTS

In June 1978 the plaintiff, Transamerica ICS, Inc., ("ICS"), entered into an agreement with Universal Container Service (H.K.) Ltd., trading as Hong Kong Container Lines, ("HK"), whereby ICS would lease overseas cargo shipping containers to HK for use in HK's carrier business. The agreement required the lessee, HK, to obtain insurance on the leased equipment with a loss payable clause in favor of ICS with respect to ICS equipment.[1]

In November 1980 defendant Tugu issued policy no. HVM8052107 ("the Policy") to HK essentially renewing a former policy.[2] The policy named ICS as an insured. In March, 1981 HK ceased operations. ICS duly demanded return of its equipment, but HK failed to return much of the equipment it had leased from ICS. ICS notified Tugu that it would claim under the Policy for the lost equipment. It did so claim, and Tugu has refused to pay. ICS brought this suit to compel payment of $904,145.84 allegedly owed under the Policy.

After reviewing the parties' papers on the defendant's motion to dismiss, the court requested the parties to submit affidavits listing the situs of crucial exhibits and witnesses and memoranda briefing the issue of what law should apply to this action. The parties have submitted affidavits and memoranda.

## DISCUSSION

In evaluating the defendant's motion to dismiss on the ground of *forum non conveniens*, the standard under which the court makes its decision is as follows: "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 151 (2d Cir.1980). The Supreme Court has stated, "there is ordinarily a strong presumption in favor of the plaintiffs choice of forum," and this is especially so, "when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). Ultimately, however, the decision lies within the discretion of the district court. *Overseas Airways, Inc. v. Cargolux Airlines International, S.A.*, 712 F.2d 11, 14 (2d Cir.1983).

The parties have submitted to the court lists of witnesses and exhibits that they assert will be necessary for trial. After a careful consideration of the items on these lists, the court concludes that the defendant has met its burden of showing that the balance is strongly in its favor.

The plaintiff, in order to prove its prima facie case, will need to show that the containers on which it claims insurance are indeed lost or constructively lost, and it will need to show its expenses incurred in salvaging the remaining containers. To do this the plaintiff will need documents, most of which are in New York (the others are around the world), and the documents' custodians, most of whom are in New York. Plaintiff might be able to make a prima facie case based on these documents, but defendant will need to bring other witnesses and documents to prove its defense,

1. Paragraph 10.A(1) of the lease requires that HK obtain:
    All Risks Physical Damage Insurance in an amount equal to the value of all the Equipment charged to it while on land, afloat, in transit or at rest anywhere in the world, including particular average and general average. Such insurance shall be endorsed with a Loss Payable Clause in favor of ICS as respects ICS property.

2. In March 1979 HK's insurance agent, Mollers' Insurance Agents (Hong Kong) Ltd. ("Mollers"), sent the defendant insurance company, Tugu Insurance Co., Ltd. ("Tugu"), from which HK had been obtaining insurance, a cover letter and a photocopy of a letter dated March 28, 1979 requesting that HK be furnished with proof of insurance to supply to its lessor, ICS. Included with this letter and memorandum was an unaddressed form letter from ICS in New York requesting certificates of insurance showing that ICS was the loss payee and that ICS would receive ten days prior written notice of cancellation. In April of 1979 Tugu executed an endorsement amending an existing insurance policy that it had with HK; the amendment added ICS as an additional insured. The same policy was renewed and by endorsement ICS was added to the new policy as an insured.

which it has raised in its motion papers, that the loss was caused by the wilful acts of the insured.[3] Defendant will need to bring witnesses of the salvage operations from around the world if it is to fairly contest the plaintiff's asserted expenses. Further, it is likely that defendant is correct in its contention that plaintiff also will need these witnesses to bolster its case. These witnesses are in the Far East, many in Hong Kong, or elsewhere around the world outside the United States.

The defendant further contends the plaintiff's documents are hearsay and are not admissible under the business records exception based on merely the authentication of the New York custodians. The court sees no need to engage in a long disquisition on the rules of evidence relating to the question raised by defendant. It cannot be ruled out that the plaintiff may be able to persuade the court at trial that the documents should be admitted under Fed.R.Evid. 803(6), yet it is a fact of life in this case that many other documents from around the world, as discussed above, will also have to be introduced.

In addition, the defendant points to two issues that cannot be tried based solely on sources in New York. First, the defendant asserts that it will need to introduce evidence of the intent of the parties in signing the insurance contract and that all the relevant documents and witnesses are in Hong Kong or England. Second, because Hong Kong law applies to this dispute,[4] defend-

---

3. Defendant has indicated its position is that the insurance coverage does not cover loss due to bankruptcy. Under the clear terms of the contract, the coverage is general and bankruptcy is not an express exclusion. The only express exclusion that could cover the circumstances here is the exclusion for "the wilful act of the insured." Hence, the defendant's position is another way of stating the argument that the losses were due to "the wilful act of the insured" in not exerting sufficient efforts to recover the containers stranded following the bankruptcy. This position raises the additional question of contract interpretation of to what extent the term "wilful act" includes losses due to insufficient recovery efforts precipitated by bankruptcy.

In addition, the defendant may argue that some of the plaintiff's sue and labor expenses in recovering "lost" containers are not recoverable under the contract if the containers involved were not "lost" but wilfully abandoned after bankruptcy.

4. New York Choice of law rules apply. *Fleet Messenger Service v. Life Insurance Co. of America*, 315 F.2d 593 (2d Cir.1963). New York applies the law of the jurisdiction "which has the most significant contacts with the matter in dispute." *Id.* at 596.

Here the plaintiff/insured is in New York, and the defendant issued the Policy knowing that the plaintiff was an insured and was based in New York. In addition, the contract of insurance covered shipping to and from the United States, among other countries. Nor can it be denied that the purpose underlying New York Insurance Law § 59–a and its amendments is to protect the interests of New York insureds and to provide them with a local forum in which to raise disputes against unauthorized foreign insurers who act within the parameters enumerated in § 59–a. New York State's interest, as manifested in § 59–a, however, does not extend to this case. New York's lack of interest is revealed in the provisions of § 59–a, which clearly do not provide for jurisdiction over the defendant here.

New York Insurance Law § 59–a, gives New York courts personal jurisdiction over a foreign insurer in a suit that is based on:

(a) Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer: (1) the issuance or delivery of contracts of insurance to residents of this state or corporations authorized to do business therein ...

New York Insurance Law § 59–a(2).

New York Insurance Law § 59–a(2)(a)(1) is clear. An insurer must issue or deliver an insurance contract in New York in order to be subject to the personal jurisdiction of New York courts under § 59–a. Tugu issued its contract in Hong Kong, not in New York State, and delivered it to HK and HK's insurance agent, not to plaintiff. Accordingly, plaintiff may not base personal jurisdiction over the defendant on New York Insurance Law § 59–a(2)(a)(1). New York has thus demonstrated a minimal interest in providing a forum to plaintiff in the circumstances of this case.

Plaintiff further contends that the defendant, as the drafter of the insurance policy, was responsible for including a choice of law provision absent which the drafter/defendant can make no claim on choice of law. Plaintiff cites no cases for this contention. On the contrary, parties' choice of law provisions do not bind courts, and the absence of such a provision here is not significant because of the overwhelming contacts with Hong Kong in the contract's negotiation, execution and performance. *Hunter v. H.D. Lee Co., Inc.*, 563 F.Supp. 1006, 1009 (N.D. N.Y.1983); *Keystone Leasing v. Peoples Protec-*

ant asserts that expert witnesses in Hong Kong law will have to be introduced and that they will have to come from Hong Kong.

As to proving the intent of the parties in signing the contract, the parties have submitted briefs on the Hong Kong parol evidence rule, and these submissions indicate that the Hong Kong rule is substantially the same as that applied in United States courts. The defendant has raised the issue of to what extent the insurance policy covers losses that are the indirect result of bankruptcy, *see* note 3 *supra.* The contract appears to be ambiguous on this point. For the purposes of this motion, the defendant as the moving party has met its burden of persuasion by showing an ambiguity in the "wilful act" exclusion, which will likely call for the introduction of extrinsic evidence. Defendant's list of witnesses on this issue show that all but one are in Hong Kong where the contract was negotiated and executed.

As a matter of fairness, it would be excessively burdensome to require a Hong Kong defendant to bring its Hong Kong witnesses and exhibits around the world to New York to defend itself in a dispute over what is essentially a Hong Kong transaction.

Finally, since Hong Kong Law applies to this dispute, adjudication will proceed more smoothly through Hong Kong courts than it would through courts in the United States.

In concluding an analysis of a convenient forum question, the court must consider the interests of the governments of the jurisdictions involved. *Piper, supra,* 454 U.S. at 259–61, 102 S.Ct. at 267–69. New York has an interest in providing a forum for its insured if the policy is issued or delivered in New York. New York Insurance Law § 59–a manifests this interest. Here, however, section 59–a, as discussed *supra,* n. 5, does not provide for jurisdiction over defendant in the circumstances of this case. Hence, plaintiff has failed satisfactorily to demonstrate a sufficient New York interest in having such a case tried in the state. Hong Kong's interest in enforcing contracts negotiated and executed in Hong Kong clearly outweighs any New York interest.

### CONCLUSION

The defendant's motion to dismiss the case on the ground of *forum non conveniens* is granted. The court need not reach the issue of personal jurisdiction on which the facts are not yet fully developed. This case is dismissed.

SO ORDERED.

*tive Life Ins.,* 514 F.Supp. 841, 847 (E.D.N.Y. 1981); *Freedman v. Chemical Construction Corp.,* 43 N.Y.2d 260, 264, 401 N.Y.S.2d 176, 179, 372 N.E.2d 12, 14 (1977).

The contacts with Hong Kong overwhelmingly overshadow the contacts with New York. The principal negotiators of the insurance contract are based in Hong Kong. All the negotiations transpired in Hong Kong. The request to the defendant to add the plaintiff as an insured came from a Hong Kong insurance agent. The request was transmitted directly from Hong Kong to the defendant in Hong Kong. The insurance relationship between HK and Tugu, in which plaintiff intervened, was based in

Hong Kong. The plaintiff required an addition to that agreement, the inclusion of plaintiff as an insured, in order for HK to lease its containers. If it also wanted New York law to apply, then it should have required as one of the conditions that New York law apply to an otherwise Hong Kong transaction.

*Fleet Messenger, supra,* 315 F.2d 593, on which ICS principally relies, actually supports the defendant's position. In that case the Court of Appeals held that the law of the state of the insured applied. Nevertheless, in that case the court found that the contacts were evenly balanced. Here they are not. Hong Kong Law applies.