**INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**OZEAN/STINNES–LINIEN and the M/V WURTTEMBERG, Appellee.**

No. 22995.

United States Court of Appeals Fifth Circuit.

Oct. 11, 1966.

Joseph M. Oliver, Oliver & Maner, Savannah, Ga., for appellant.

George H. Chamlee, Lawton, Sipple & Chamlee, Savannah, Ga., for appellee.

Before RIVES, BELL and THORN-BERRY, Circuit Judges.

RIVES, Circuit Judge.

This is a libel in personam by Insurance Company of North America as the subrogee of a Swiss shipper and a German consignee of a cargo of acetate tow (cigarette filter material) shipped from Savannah, Georgia, to Bremen, Germany in 1962. The libel is against the German association which issued the ocean bill of lading under which the cargo was shipped. The libel claims damages totaling $22,000 for odor contamination of the cargo in shipment.

The respondent denies liability, alleging that the contamination was the result of hurricane weather encountered by the vessel, which caused drums of citral crude, a pungent chemical, to break loose from their strappings and to burst, releasing a strong odor which spread into the cargo holds. The respondent further contends that the consignee could have completely eliminated the odor by ozone treatment of the cargo upon discharge.

The libel was originally filed in the Eastern District of Louisiana, New Orleans Division, and was transferred to the Southern District of Georgia, Savannah Division, under the provisions of 28 U.S.C.A. § 1404(a), upon the respondent's motion and supporting affidavit and memorandum.

The supporting affidavit attests that vessels of the respondent make four or more scheduled calls at the Port of Savannah each month, and load and discharge at said port approximately 30,000 tons of cargo per year; that Savannah is the principal loading port for respondent; that the respondent will need to call a number of witnesses from the vessel's agents at Savannah and from the employees of the loading stevedore at Savannah.

The memorandum in support of the motion to transfer asserted that "clearly there is jurisdiction in the federal court" in Savannah, and recites:

"The fact that the vessel and its owners were sued in New Orleans, was apparently a purely fortuitous event. There is only one logical forum for this litigation in this country and that is the loading port of Savannah, Georgia. In the defense of this matter, it will be necessary for respondent to call a number of witnesses from the vessel's agents and also from the loading stevedore. One of the defenses is that the damage resulted from heavy weather. The vessel encountered winds up to force 12 during the voyage. In order to support the heavy weather defense, it will be necessary to show the precise manner in which not only this particular consignment but also other consignments were stowed aboard this vessel. As a result, it will be necessary to have a number of witnesses, all of whom resident [sic] in Savannah, Georgia, and/or Jacksonville, Florida, for this purpose.

"The consignment in question, acetate tow, we understand, was manufactured in Kingsport, Tennessee. It may be necessary to have witnesses from the manufacturer. The distance between Kingsport and Savannah is approximately half the distance between Kingsport and New Orleans. So far as is known, there are no witnesses who would be involved in this matter from the city of New Orleans."

The district court in New Orleans found that "though the court generally would not disturb libelant's choice of forum, it is apparent that this libel * * * can more expeditiously and conveniently be tried in the Savannah Division of the Southern District of Georgia." It gave the following reasons for that finding.

"This is a suit for cargo damage arising out of a shipment from Savan-

nah, Georgia, to Bremen, Germany, of 56 bales of acetate tow over the respondent's steamship line. Respondent is a regularly scheduled berth line operating out of South Atlantic and Florida ports; over half of the sailings of the South Atlantic Steamship Conference are made by its vessels. Four or more scheduled calls per month are made at the Port of Savannah, which is the principal loading port for respondent which has been operating out of Savannah since 1956. The stevedoring was done by a Savannah company, performed by longshoremen residing in Savannah. The defense expects to use witnesses [sic] this stevedoring company (Stevens Shipping Company), which is also Savannah area agent for respondent. New Orleans has no connection whatever with this case, except that the general agent for respondent, Biehl and Company, is in New Orleans. With the exception of ship's personnel, most of the witnesses will be from Savannah, with some from Jacksonville, Florida, and possibly Kingsport, Tennessee. There are no witnesses involved in the matter from the City of New Orleans."

Following transfer to the Southern District of Georgia, Savannah Division, the respondent filed its answer to the merits, certain exceptions, and a motion to decline jurisdiction. The motion recites two grounds: (1) The bill of lading provides that any claim thereunder shall be decided by the German courts in Hamburg, in accordance with the Hague Rules as enacted in the German Commercial Code; and (2) the considerations of forum non conveniens make the German courts a more convenient forum to decide this controversy. The motion to decline jurisdiction was granted upon condition that the respondent file a written waiver of the German statute of limitations should the action be re-filed in the German courts. Such a waiver having been filed, the court dismissed the libel without prejudice.

This appeal is from the order declining jurisdiction and dismissing the libel. It presents two issues: (1) Whether the respondent's motion to decline jurisdiction, asserted at Savannah, is inconsistent with its earlier motion, asserted at New Orleans, to transfer the case to Savannah for convenience of parties and witnesses. (2) Whether the action of the district court at Savannah in declining jurisdiction, pursuant to a bill of lading clause providing for determination of claims in German courts in accordance with German law, is in conflict with this Court's decision in Carbon Black Export, Inc. v. The SS Monrosa, 1958, 254 F.2d 297. Compare Wm. H. Muller & Co. v. Swedish American, Ltd., 2 Cir. 1955, 224 F.2d 806. We decide the first issue in favor of the appellant and, hence, do not reach the second issue.[1]

■■ The transfer to the Southern District of Georgia, Savannah Division, under 28 U.S.C.A. § 1404(a) was "[f]or the convenience of the parties and witnesses" and presupposes that the case would be tried on its merits in the district court at Savannah. The respondent's motion to decline jurisdiction asserted at Savannah could just as conveniently have been asserted in the Eastern District of Louisiana, New Orleans Division. It was candidly admitted upon oral argument that the real reason for not insisting upon the motion to decline jurisdiction in the court at New Orleans was that the judge of that court was not expected to be as receptive to such a motion as was the judge of the district court at Savannah. There is no contention that the prior as-

---

1. Any discussion of the second issue would be academic and inappropriate since the respondent was not in position to move to decline jurisdiction. In addition to such a motion being inconsistent with respondent's earlier motion to transfer, it might well be contended that the motion to decline jurisdiction was *untimely* since it was made after the transfer had operated to delay the disposition of the case. Compare 28 U.S.C.A. § 1406(b); 1 Moore's Federal Practice ¶ 0.145[4.-3], p. 1768. The question of *untimeliness*, however, need not be considered.

sertion of respondent's motion to decline jurisdiction would have caused its motion to transfer under 28 U.S.C.A. § 1404(a) to be untimely.[2] The appellee argues in brief that, "The motion to transfer and the motion to decline jurisdiction are not in themselves inconsistent since the former asserts that Savannah is the most *convenient* place to try this case *if it is to be tried in this country;* while the latter asserts that the case is a matter properly cognizable by the courts of a foreign country." (Emphasis that of appellee.) We do not find any such assertion in the motion to transfer itself. The nearest approach to such an assertion is in the statement in the "Memorandum in Support of Motion to Transfer" that, "There is only one logical forum for this litigation in this country and that is the loading port of Savannah, Georgia." Clearly, that is not sufficiently definite to reserve the right to file the motion to decline jurisdiction.

The respondent moved for the transfer to the district court in Savannah, thereby avoiding a trial in New Orleans and securing the claimed convenience of a trial in Savannah. The libelant lost his choice of forum and had to prepare for trial in Savannah. The respondent cannot now be permitted to contend that, after all, Savannah is not the most appropriate place for a trial on the merits and, upon such contention, to have the libel dismissed. The respondent may not, as it attempts to do here, "so trifle with the judicial process."[3] This is something which the courts will not tolerate.[4]

The judgment declining jurisdiction and dismissing the libel is therefore reversed and the cause is remanded for a trial on its merits.

Reversed and remanded.

2. See Spence v. N&W Railway Co., N.D. Ohio, 1950, 89 F.Supp. 823, 825; I Moore's Federal Practice, 2nd ed., ¶ 0.145 [4.-3], pp. 1768, 1769; 1 Barron & Holtzoff, Federal Practice & Procedure, Rules ed., § 86.1, p. 409.

3. Livesay Industries v. Livesay Window Co., 5 Cir. 1953, 202 F.2d 378, 382.

4. Scarano v. Central R. Co. of N. J., 3 Cir. 1953, 203 F.2d 510, 513. See also, Texas Co. v. Gulf Refining Co., 5 Cir.1928, 26 F.2d 394, 397; authorities collected in 1B Moore's Federal Practice, ¶ 0.405[8], pp. 765–773; 31 C.J.S. Estoppel § 115, pp. 602–606.