743 F.2d 1140
 1986 A.M.C. 1201
 LIAW SU TENG, Individually and as Personal Representative of
the Estate of Liaw Der Chin, and as Legal Guardian of Liau
Chin Sun, Liaw Chui Peng and Liaw Chui Fun; and Liaw Der
Sheng, et al., Plaintiffs-Appellants,
v.
SKAARUP SHIPPING CORP., et al., Defendants,
Summit Investment Corp., Defendant-Appellee.
 No. 83-3452.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 15, 1984.
 
 Due', Dodson, deGravelles, Robinson & Caskey, Paul H. Due', Baton Rouge, La., for plaintiffs-appellants.
 Terriberry, Carroll, Yancey & Farrell, Charles F. Lozes, New Orleans, La., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, REAVLEY, and TATE, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Foreign nationals injured by the collision on the high seas of two vessels flying the flags of different nations seek redress from the owners of both vessels in a United States district court. Absent compelling reasons, such a suit obviously ought not to be divided into separate suits against the owner of each vessel with each case then to be tried separately in the forums of different nations, for that sort of bifurcation creates not only the necessity of two separate trials to determine responsibility for a single event, but also the possibility of inconsistent results.
 
 
 2
 This litigation arises from the collision of two vessels in the Mediterranean Sea. Seven separate suits were filed in a Louisiana district court for the deaths of seven of the seamen, who were members of the crew of one of the vessels, seeking joint and several recovery against the owners of both the vessel on which they had been working and the other vessel involved in the collision. On motion of the owner of the employer vessel, the district court transferred the claims against it to the Southern District of New York but, concluding that personal jurisdiction over the owner of the other (non-employer) vessel was wanting, dismissed the claim against it on the basis of forum non conveniens, conditioned on the owner's submission to the jurisdiction of some appropriate court. Because the United States District Court for the Eastern District of Louisiana had jurisdiction over the owner of the non-employer vessel, and because American law, interpreting the communis juris, is applicable to the claims against it, we reverse the judgment dismissing the claims against the owner of that vessel.
 
 
 3
 Because no issue has been raised concerning the transfer of the claims against the seamen's employer, we do not consider the correctness of that order. However, those claims having been transferred to the Southern District of New York, we remand for transfer of the claims against the non-employer defendant to the same court.
 
 I.
 
 4
 Thirty-two members of the crew of the M/V FEDDY, each of whom had been a resident either of Taiwan or Hong Kong, died as a result of a collision between the FEDDY and the M/V SOUNION in the Mediterranean Sea off the coast of Algeria in 1981. Seven suits were filed in the Eastern District of Louisiana by the personal representatives of Taiwanese crew members who had signed contracts of employment in Taiwan, Republic of China. These were consolidated and all are included in this appeal.
 
 
 5
 The FEDDY, which was registered in Liberia, was owned by Solvang Shipping Company and operated by Skaarup Shipping Company; the SOUNION was owned by Summit Investment, Inc. Skaarup is a New York corporation with offices in Greenwich, Connecticut. It contends that it had surrendered management of the FEDDY to its owner, Solvang, a Liberian corporation, 95% of whose stock is beneficially owned by United States citizens or residents. The FEDDY had made three calls to the port of New Orleans some time before suit was filed, and this was the basis for the plaintiff's assertion that venue lay in the Eastern District of Louisiana. Coincident with this litigation, Solvang had filed a limitation action in the Southern District of New York.
 
 
 6
 Skaarup and Solvang sought transfer of the action to the Southern District of New York as a more convenient forum, invoking 28 U.S.C. Secs. 1404(a) and 1406(a). The district court ordered the transfer, and no objection to that order is urged on appeal. This appeal, therefore, concerns only the dismissal of the action against Summit, the owner of the SOUNION, the vessel that was not the seamen's employer.
 
 
 7
 Summit is a Panamanian corporation whose stock is owned by Greek nationals. The M/V SOUNION is registered in Greece and has never entered Louisiana waters. Save for Summit's statements to the court, the record contains no evidence that Summit has an American base of operations. Discovery of facts concerning Summit's operations and ownership has never been completed, but its sole American connection established to date is that it owes a mortgage on the SOUNION to a New York bank. The record shows no connections between the SOUNION and the Eastern District of Louisiana.
 
 
 8
 Summit filed a motion to dismiss the claim against it either for want of jurisdiction over its person, or, alternatively, because the forum was inconvenient. Thereafter, when the SOUNION called at the Port of Chicago, the plaintiffs filed an in-rem complaint against the vessel in the Northern District of Chicago. To avoid arrest of the vessel, Summit agreed to provide a letter of undertaking and to "enter appearance in EDLA ... waiving personal jurisdiction defense of U.S. courts but with full reservation of all other rights or to pursue forum non conveniens, transfer, etc." (Emphasis added.)
 
 
 9
 Summit then filed a motion for transfer of the suits against all defendants, including Summit, to the Southern District of New York. The plaintiff resisted that motion. Summit's brief asserted that the motion was based on the thesis that the Eastern District of Louisiana was not a proper venue for the suit. Summit relied on 28 U.S.C. Sec. 1406(a), which deals with transfer of a case laying venue in the wrong district, and took "the position that transfer to the Southern District of New York [was] proper as to it and that therefore transfer to that forum is transfer to a forum in which the case might have been brought." Summit's brief also stated: "Summit is not yet asking for the Sec. 1406(a) dismissal, but preliminarily seeks transfer to the Southern District of New York where Summit contends venue is proper." Summit stated that it had sufficient contact with the State of New York to support personal jurisdiction and venue there. That district, it contended, was not excluded by the provision in Sec. 1404(a) permitting transfer only to a court in which the action "might have been brought," because that section is "remedial in nature. [Its] purpose is served by consideration of each case individually in light of convenience and fairness and ... by a broad and unrestrictive reading of the term 'where it might have been brought.' "
 
 
 10
 The trial court ordered the claims against Solvang and Skaarup dismissed for lack of personal jurisdiction. The court said that transfer of the case under Secs. 1404(a) and 1406 would not be "in the interest of justice." The plaintiffs knew or should have known, the court said, that service of process could not be effected in the Eastern District; the court would not allow these transfer sections "to be used to aid non-diligent plaintiffs who knowingly file a case in the wrong district." It therefore referred to Summit's original motion, which alternatively sought dismissal of the suit because the forum was not convenient, and dismissed the claims against Summit. At this juncture, the entire suit was dismissed.
 
 
 11
 The plaintiffs then moved to set aside that ruling and sought transfer of the entire case to the Southern District of New York. After Solvang and Skaarup represented that they were prepared to defend the matter there, the trial court transferred the claims against these defendants to the Southern District of New York. It then returned to Summit's alternative forum-non-conveniens motion. Despite the fact that Summit had filed a motion to transfer the claim against it to the Southern District of New York after seeking dismissal of the case, the court said it was not "convinced that New York is a district where the actions might have been brought" when filed. The court thought United States law inapplicable to the claims against Summit, and decided that the Eastern District of Louisiana was, based on the factors discussed by the Supreme Court in Gulf Oil Corporation v. Gilbert,[1] an inconvenient forum. The court then dismissed the claims against Summit, conditioned on its submission to service of process and jurisdiction "in an appellate court, including Taiwan, in which plaintiffs shall have filed suit within 90 days of the order of dismissal" and on other conditions not presently relevant.
 
 
 12
 The district court noted that it would have preferred to transfer the claims against Summit to the Southern District of New York "for that Court's decision on the issue of forum non conveniens as it relates to all defendants in the wrongful death actions" but did not do so because it was not convinced that New York was a district in which the actions might have been brought.
 
 II.
 
 13
 The district court stated that, as to the SOUNION, it must determine first whether United States or foreign law governed the seamen's claims. If it found United States law applicable, it would retain jurisdiction. If it found foreign law applicable, it would then consider the convenience of the forum.[2] In determining which corpus juris was applicable, the district court applied the Lauritzen[3]-Rhoditis[4] factors.
 
 
 14
 This approach confuses the analysis applicable to a Jones Act unseaworthiness claim by a seaman against the vessel aboard which he was employed with that applicable to a claim by a person injured on the high seas against a vessel with which he had no employment connection. The applicability of the Jones Act and the almost invariably related unseaworthiness claim against the owner of the employer vessel turns not only on the crew member's connection with the vessel but on other factors that are essential to determining that these American law bases for liability may exist. That decision must be based on the Lauritzen-Rhoditis factors, which determine whether either United States or foreign law is applicable.
 
 
 15
 A different preliminary analysis for determining the applicable body of law is necessary with respect to a seaman's claim against a third-party vessel for injuries sustained as a result of an alleged tort on the high seas. That sort of claim must be decided by principles of United States law, interpreting and applying the communis juris, the common law of the seas.[5]
 
 
 16
 In either type of case, the first question is whether the court has subject matter jurisdiction of the suit. Lacking such jurisdiction, there is no power to consider personal jurisdiction over the defendants or any other issue. If the court has subject matter jurisdiction, the next inquiry is whether it has personal jurisdiction over the parties. Section 1404(a) of the Judicial Code bears on both that inquiry and others here involved.[6] It permits a district court to transfer any civil action to any other district "where it might have been brought." While ordinarily a court may not take any action against a party over whom it lacks personal jurisdiction, Sec. 1404(a), as interpreted by this circuit, permits the court in which an action is filed to make an initial determination that its forum is not proper even for determining the jurisdictional issue, and it may transfer the case to a proper forum in which all questions, including the threshold one of personal jurisdiction, may be resolved.[7]
 
 
 17
 At the time the claims against Summit were dismissed, there was no need to consider the question of personal jurisdiction: Summit had submitted itself at least to the jurisdiction of the Eastern District of Louisiana. The only disputed question before the district court was whether it should decline to exercise the jurisdiction thus established.
 
 
 18
 The guiding principles for determining forum convenience are set forth in Gulf Oil Corporation v. Gilbert[8] and Piper Aircraft Co. v. Reyno.[9] In maritime matters involving suits by a crewmember against his employer or the vessel aboard which he was employed, we have held that, if United States law applies, a federal court should entertain the suit. If foreign law applies, the court may dismiss the suit if there is another more convenient forum.[10] In determining whether foreign or domestic law applies, guidance is provided by the Supreme Court decisions in Lauritzen v. Larsen[11] and Hellenic Lines v. Rhoditis.[12]
 
 
 19
 While not specifically confined to the suits of crew members against their employers or host vessels, the Lauritzen-Rhoditis factors focus on the applicability of the Jones Act to the claims of seamen against those who stand in the locus of employer. These criteria also apply to the suit of a foreign claimant for injuries sustained in foreign coastal waters.[13] When, however, the claim is for a tort allegedly committed by a third person on the high seas, we are guided by The Belgenland,[14] a case involving the broader question of retaining jurisdiction over maritime tort claims generally. The Belgenland dictates that, in cases involving collisions on the high seas, the controlling rules of law are the law of the forum as that forum interprets the general maritime law, the communis juris. Unlike the situation in which a seaman invokes the Jones Act, the choice of applicable law in this case is beyond dispute; the issue is whether, given the applicability of American law, the suit should be entertained in an American court.
 
 
 20
 The Court announced in The Belgenland that a federal court is to retain jurisdiction of such cases unless doing so will result in an injustice and must begin with the assumption that the court will exercise jurisdiction unless it is established, by the defendant, that an injustice would follow.[15]
 
 
 21
 Retention of jurisdiction in suits involving the communis juris does not automatically follow from the applicability of American law. Thus, in Perusahaan Umum Listrik Negara v. M/V Tel Aviv,[16] we declined to retain jurisdiction over an action arising out of a high-seas collision in which: the sole jurisdictional basis was in rem, obtained by seizure of the vessel in a United States port; a foreign forum was adequate and available; the dismissal of the American suit was conditioned on defendant's submission to the jurisdiction of the foreign forum and its posting of equivalent security in that forum; and the defendant's showing of convenience of the foreign forum substantially outweighed the plaintiff's showing of convenience of the United States forum. We explained that our earlier decision in Motor Distributors v. Olaf Pedersen's Rederi A/S[17] and the cases relying on it[18] must be read in the light of the Supreme Court's Gilbert decision, and that in rem admiralty cases "do not represent an exception to the Gilbert balancing analysis."[19] There is no reason why in personam admiralty cases should be exempt from either the Gilbert analysis or the rationale of M/V Tel Aviv.
 
 
 22
 In cases involving the communis juris, federal courts may, as both these decisions hold, decline jurisdiction to prevent misuse of a litigant's ability to seek a favorable forum. If choice of forum is not being abused, the court should determine whether jurisdiction should be retained by considering first the availability of an adequate alternative forum, and, if such a forum is available, the private interests of the litigants, including access to sources of proof, the relative ease of service of process, the availability of compulsory process to obtain the attendance of witnesses, the cost of obtaining the attendance of witnesses, the possibility of view of the vessel,[20] the enforceability of the judgment, the ability of a party to impeach other parties, and public interests underlying the relationship between the forum and the dispute and the familiarity of the forum with the relevant law.
 
 
 23
 "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[21] This rule is well settled even though we are not so ingenuous as to suppose that the plaintiff's choice is made for either altruistic or idealistic motives. As we have recently noted, "As a moth is drawn to the light, so is a litigant drawn to the United States,"[22] not merely for illumination but in search of a wider choice of remedies, a more favorable set of procedures, and a larger award.
 
 
 24
 These factors weigh against dismissal here. There has been no showing that another forum is even available: there has been no showing that the courts of Taiwan would entertain this action. The only evidence concerning other forums is an affidavit by an expert on the law of the Republic of China that creates doubt of the essential predicate for dismissal: the existence of an available alternative forum.[23] Even if the courts of the Republic of China are available, defendants have not established their adequacy for the determination of the issues involved in a two-ship collision in which the plaintiffs have made tort claims against both vessels but only the owner of one vessel is before the court. Summit notes that the plaintiffs have filed a suit in Greece and asserts that this would be an acceptable forum, but, even if Greek courts would entertain the suit, that forum is certainly not convenient. Given that the Eastern District of Louisiana is a manifestly inconvenient place for the litigation, it has not been shown that the Republic of China or Greece would be more convenient. Dismissal of the case was, therefore, improper.
 
 III.
 
 25
 The district court thought that it lacked power to transfer the claims against Summit to the Southern District of New York under either Section 1404(a), which concerns transfer of a case filed in a proper venue,[24] or section 1406(a),[25] which concerns transfer of a case filed in a court in which venue was not properly laid, because the Southern District of New York was not a court in which the case "might have been brought" at the time suit was filed.
 
 
 26
 Sections 1404(a) and 1406(a) are both short, apparently clear, and seemingly mutually exclusive. Section 1404(a) permits transfer of a civil action to any other district in which it could have been brought, and refers to a civil action in which venue is properly laid in the district where the case was filed. Section 1406(a) pertains to transfer of a case laying venue in the "wrong district." Neither section refers to jurisdiction, and it might be thought that a court lacking personal jurisdiction over the defendant has no power to issue any order. Indeed, the statutes are most frequently read in just this forthright manner. Yet, in law, as several poets have observed about life, things are not always what they seem. Section 1406(a) has been read by the Supreme Court to be "broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."[26] Section 1406(a) has since been read by some courts to permit transfer of cases from a district where venue was proper but jurisdiction could not be obtained on the thesis that a district is " 'wrong' within the meaning of Sec. 1406 whenever there exists an 'obstacle [to] ... an expeditious and orderly adjudication' on the merits. Inability to perfect service of process on a defendant in an otherwise correct venue is such an obstacle."[27] Other courts, including this circuit, have relied on Sec. 1404(a) as authority to transfer cases in which venue was properly laid but personal jurisdiction over the defendant was lacking.[28]
 
 
 27
 Judge Randall, writing for this court, has aptly referred to these cases as a "nearly hopeless muddle of conflicting reasoning and precedent."[29] The Second Circuit therefore grabbed both horns of the apparent dilemma and read the two sections together, placing "a judicial gloss on the statutory language, thereby curing Congress' defective draftsmanship." A court, it divined, may " 'transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice.' "[30] In this circuit, we achieve the same result by invoking either section, not by reading the two together: "a transfer to a district in which personal jurisdiction over the defendant can be obtained may properly be made under either section 1404(a) or section 1406(a)."[31]
 
 
 28
 However, Sec. 1404(a) requires that the transferee court be one in which the action "might have been brought." As interpreted in Hoffman v. Blaski,[32] this requirement remains a barrier to transfer at the defendant's instance, over the plaintiff's objection, if at the time suit was originally brought the transferee district would have lacked jurisdiction over the defendant or if venue there would have been improper.[33]
 
 
 29
 Ordinarily transfer of a suit against multiple defendants is proper only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.[34] If, however, suit might have been brought against one or more defendants in the court to which transfer is sought, the claims against those defendants may be severed and transferred while the claims against the remaining defendant, for whom transfer would not be proper, are retained in the original court.[35]
 
 
 30
 But before thus putting asunder what the plaintiff has joined, the court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places.[36] That being the situation here, the district court should not have severed the claims if there were any alternative. Manifestly, the plaintiffs will suffer some inconvenience if they are forced to litigate their claims in two courts, half the world apart from each other, with not only the consequent added expense and inconvenience but also the possible detriment of inconsistent results. A single forum is also most suitable for determining possible counter- and cross-claims. The public also has an interest in facilitating a speedy and less-expensive determination in one forum of all of the issues arising out of one episode. Thus the district court would have promoted convenience by transferring the entire case to New York, including the claims against Summit, if that result were legally permitted. We turn to the question whether, if Summit could not properly have been sued in the Southern District of New York at the time this suit was filed, the action against it may be transferred under Sec. 1404(a) by virtue of events that occurred later.
 
 
 31
 When the defendant seeks transfer to another forum, over the objection of the plaintiff, the words of Sec. 1404 allowing transfer to a district where suit "might have been brought" direct the attention of the judge to the situation that existed when suit was brought.[37] The Supreme Court held in Hoffman v. Blaski that a defendant's subsequent motion to transfer a suit to a district that originally was an improper venue and lacked jurisdiction over the defendant could not override the right of the plaintiff to elect to sue in a district of proper venue and jurisdiction. According to the Supreme Court,
 
 
 32
 that thesis, if adopted, would empower a District Court, upon a finding of convenience, to transfer an action to any district desired by the defendants and in which they were willing to waive their statutory defenses as to venue and jurisdiction over their persons, regardless of the fact that such transferee district was not one in which the action "might have been brought" by the plaintiff. Conversely, that thesis would not permit the court, upon motion of the plaintiffs and a like showing of convenience, to transfer the action to the same district, without the consent and waiver of venue and personal jurisdiction defenses by the defendants. Nothing in Sec. 1404(a), or in its legislative history, suggests such a unilateral objective and we should not, under the guise of interpretation, ascribe to Congress any such discriminatory purpose.[38]
 
 
 33
 Despite the commentators' disapprobation of this decision[39] and its criticism by lower courts,[40] we are bound by it. In the present case, however, factors not present in Hoffman have been added: it is the plaintiff who now seeks transfer to the Southern District of New York, and the defendant has itself previously sought such a transfer, stating that the Southern District is of proper venue and jurisdiction, although it has since changed its position. The discriminatory result feared by the Court in Hoffman will not be achieved by permitting a transfer in this case, since the defendant has effectively consented to venue and personal jurisdiction in the Southern District of New York.
 
 
 34
 We do not reflect on the defendant's manipulations alone: it is patent that each of the parties has engaged in a series of forum-selection maneuvers. So long as the plaintiff thought all litigation might be retained in Louisiana, he resisted transfer. Once transfer of part of the claim appeared inevitable, or at least the only alternative to dismissal, he sought transfer of all claims to a single court.
 
 
 35
 Our duty is to ignore the gamesmanship of the litigants and to seek the most just result permitted by applicable law. Almost twenty years ago this circuit held that a defendant who filed a successful motion to transfer should not thereafter be granted dismissal in the transferee forum on the basis of forum non conveniens.[41] Such a defendant would not be permitted to "trifle with the judicial process" by reversing his field and seeking dismissal.[42] Summit has not only sought transfer, but, for whatever reasons, has asserted that the Southern District of New York has personal jurisdiction over it and that venue could properly be laid there. The record, as presently composed, does not support that assertion, but the plaintiff had no reason to suppose that discovery was necessary to establish facts thus admitted.
 
 
 36
 We do not believe that the rationale of Hoffman was intended to apply to a case where both parties have, by their procedural maneuvers, effectively consented to jurisdiction and venue in the transferee forum. At the time the plaintiffs sought transfer of the claims against Summit to the Southern District of New York, Summit had apparently consented to the jurisdiction of all United States courts, as its telex reads,[43] and not merely to the jurisdiction of the Eastern District of Louisiana. By filing its motion for transfer, it had waived its objection to the New York forum. This is the rationale of our decision in Insurance Company of North America v. Ozean/Stinnes Linien and the M/V Wurttemberg,[44] which involves a somewhat different factual situation, for in that case the assertion that the transferee forum was inconvenient was made after the motion to transfer had been granted. While the plaintiff has also asserted facts inconsistent with its present position, the manipulations of the parties should not be permitted to obstruct what is patently in the interest of justice: that all of the claims, and all of the possible counter claims arising out of a single collision on the high seas be heard in a single forum. Since the claims against Skaarup and Solvang are now located in the Southern District of New York, transfer of the claims against Summit to that district is in the interest of justice and convenience.
 
 
 37
 For these reasons the judgment is REVERSED and the case is REMANDED to the district court for transfer of the claims against the non-employer defendant to the Southern District of New York.
 
 
 
 [1]
 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed.2d 1055 (1947)
 
 
 [2]
 This is the method applied in Fisher v. Agios Nicolaos V, 628 F.2d 308 (5th Cir.1980), cert. denied, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981), and since utilized by us in a number of cases involving claims against employers of crew members or the host vessel. See De Oliveira v. Delta Marine Drilling Co., 707 F.2d 843 (5th Cir.1983); Volyrakis v. M/V Isabelle, 668 F.2d 863 (5th Cir.1982)
 
 
 [3]
 Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed.2d 1254 (1953)
 
 
 [4]
 Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970)
 
 
 [5]
 Jackson v. Jensen (The Belgenland), 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885); Kloeckner Reederei Und Kohlenhandel v. A/S Hakedal, 210 F.2d 754, 756 (2d Cir.1954)
 
 
 [6]
 That paragraph reads:
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 An admiralty suit, either in personam or in rem, is a "civil action" within the meaning of this section. Cessna Aircraft Co. v. Brown, 348 F.2d 689 (10th Cir.1965); Continental Grain Company v. The FBL-585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).
 
 
 [7]
 The issue is one on which the courts of appeal are divided, but we have consistently so held, beginning with Koehring Company v. Hyde Construction Company, 324 F.2d 295 (5th Cir.1963); Aguacate Consolidated Mines v. Deeprock, 566 F.2d 523, 524-25 (5th Cir.1978); Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1107 (5th Cir.1981)
 The commentators approve this result although they note that courts reaching it differ about whether the statutory basis is Sec. 1404(a) or Sec. 1406(a). See 15 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure Sec. 3827 [interprets Sec. 1404(a) to achieve this result]; 1 Moore's Federal Practice, Sec. 0.145 [4. -5] at 1610-12. Either result is based on an extension of the principle of Goldlawr v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).
 
 
 [8]
 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)
 
 
 [9]
 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)
 
 
 [10]
 Fisher v. Agios Nicolaos V, 628 F.2d 308, 315 (5th Cir.1980), cert. denied, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981); De Oliveira v. Delta Marine Drilling Co., 707 F.2d 843 (5th Cir.1983)
 
 
 [11]
 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953)
 
 
 [12]
 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970)
 
 
 [13]
 De Oliveira v. Delta Marine Drilling Co., 707 F.2d 843, rehearing en banc denied, 715 F.2d 577 (5th Cir.1983)
 
 
 [14]
 Jackson v. Jensen, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885)
 
 
 [15]
 Jackson v. Jensen, 114 U.S. at 367, 5 S.Ct. at 865, 29 L.Ed. at 156. See also Motor Distributors v. Olaf Pedersen's Rederi A/S, 239 F.2d 463, 465 (5th Cir.1956); Poseidon Schiffahrt, G.M.B.H. v. M/S Netuno, 474 F.2d 203 (5th Cir.1973)
 
 
 [16]
 711 F.2d 1231 (5th Cir.1983)
 
 
 [17]
 239 F.2d 463 (5th Cir.1956)
 
 
 [18]
 See Carbon Black Export v. The SS Monrosa, 254 F.2d 297, 300 (5th Cir.1958); Poseidon Schiffahrt, G.M.B.H. v. M/S Netuno, 474 F.2d 203 (5th Cir.1973)
 
 
 [19]
 M/V Tel Aviv, 711 F.2d at 1236
 
 
 [20]
 See De Oliveira v. Delta Marine Drilling Co., 707 F.2d at 846-47
 
 
 [21]
 Gulf Oil Corporation v. Gilbert, supra note 1, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed.2d at 1062. Perusahaan Umum Listrik Negara v. M/V Tel Aviv, 711 F.2d 1231, 1235 (5th Cir.1983)
 
 
 [22]
 Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 289 (5th Cir.1984), quoting Smith Kline and French Laboratories, Ltd. v. Block, [1983] 2 All.E.R. 72, 74 (C.A.1982) (Denning, M.R.)
 
 
 [23]
 See M/V Tel Aviv, supra note 21, 711 F.2d at 1238
 
 
 [24]
 28 U.S.C. Sec. 1404(a) provides:
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 
 
 [25]
 28 U.S.C. Sec. 1406(a) provides:
 The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
 
 
 [26]
 Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466, 82 S.Ct. 913, 916, 8 L.Ed.2d 39, 42 (1962). In Goldlawr the transferor court lacked jurisdiction and, in addition, was an improper venue
 
 
 [27]
 Dubin v. United States, 380 F.2d 813, 815 (5th Cir.1967), quoting Goldlawr, 369 U.S. at 466, 82 S.Ct. at 916, 8 L.Ed.2d at 42. See additional cases cited in Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1105 (5th Cir.1981)
 
 
 [28]
 Koehring Co. v. Hyde Construction Co., 324 F.2d 295, 297-98 (5th Cir.1963) and cases cited in Ellis, supra n. 27, 646 F.2d at 1106
 
 
 [29]
 Ellis, supra n. 27, 646 F.2d at 1106
 
 
 [30]
 Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 & n. 9 (2d Cir.1978), quoting Volk Corp. v. Art-Pak Clip Art Service, 432 F.Supp. 1179, 1181 (S.D.N.Y.1977)
 
 
 [31]
 Ellis, supra n. 27, 646 F.2d at 1107, citing Aguacate Consolidated Mines, Inc. v. Deeprock, Inc., 566 F.2d 523, 524-25 (5th Cir.1978)
 
 
 [32]
 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)
 
 
 [33]
 American Oil Company v. McMullin, 433 F.2d 1091, 1095 (10th Cir.1970). Compare Continental Grain Co. v. Barge F.B.L.--585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) (The plaintiff joined an in rem claim against a barge with a claim against the owners; the in rem claim could have been brought only where the barge was located. The court held that the in rem claim did not preclude transfer on the owner's motion of the entire action to a more convenient forum in another state, where an in personam action "might have been brought" against the owner alone in the transferee forum); Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (the plaintiff's lack of qualification to sue in the transferee district as a matter of state law did not bar transfer)
 
 
 [34]
 See 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure, Sec. 3845 at 224, and cases cited therein
 
 
 [35]
 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure Sec. 3845 at 225, and cases cited therein
 
 
 [36]
 See 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure, Sec. 3845 at 226, and cases cited therein
 
 
 [37]
 Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)
 
 
 [38]
 363 U.S. at 344, 80 S.Ct. at 1090, 4 L.Ed.2d at 1262 (1960)
 
 
 [39]
 See Korbel, The Law of Federal Venue and Choice of the Most Convenient Forum, 15 Rutgers L.Rev. 607 (1961); Masington, Venue in the Federal Courts--The Problem of the Inconvenient Forum, 15 U.Miami L.Rev. 237 (1961); Note, 46 Cornell L.Q. 318 (1961)
 
 
 [40]
 See A.J. Industries v. U.S. Dist. Court for the Cent. Dist. of Calif., 503 F.2d 384, 387-89 (9th Cir.1974); Schertenleib v. Traum, 589 F.2d 1156, 1163 (2d Cir.1978)
 
 
 [41]
 Insurance Company of North America v. Ozean/Stinnes-Linien and the M/V Wurttemberg, 367 F.2d 224 (5th Cir.1966). Compare Bailey v. Dolphin International, Inc., 697 F.2d 1268, 1273 n. 16 (5th Cir.1983) (distinguishing the earlier decision)
 
 
 [42]
 Id. 367 F.2d at 227
 
 
 [43]
 See supra page 267
 
 
 [44]
 367 F.2d 224 (5th Cir.1966)