**SYNDICATE 420 AT LLOYD'S, LONDON**

v.

**GLACIER GENERAL ASSURANCE COMPANY, Standard Marine Underwriters, Inc., Edward G. Brennan, A.W. Knott Becker Scott, Ltd., Lowndes Lambert Group, Ltd. and E & O Underwriters.**

**Civ. A. No. 83–5787.**

United States District Court, E.D. Louisiana.

March 7, 1985.

Harry S. Redmon, Jr., Esmond Phelps, II, James E. Churchill, Jr. and Margot Mazeau of Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for plaintiff.

James G. Burke, Jr., Burke & Mayer, New Orleans, La., for Glacier General Assur. Co.

Brunswick G. Deutsch, Francis J. Barry, Jr., T.A., Deutsch, Kerrigan & Stiles, New Orleans, La., for Lowndes Lambert Group.

Charles E. Lugenbuhl, T.A., Jon W. Wise, New Orleans, La., for Standard Marine Underwriters, Inc. and Edward G. Brennan.

Robert Barkley, Francis White, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for Syndicate 683.

R.K. Christovich, Christovich & Kearney, New Orleans, La., for Knott Becker.

Joseph Leake, Joseph Clark, Hammett, Leake & Hammett, New Orleans, La., for E & O Underwriters.

## OPINION

FELDMAN, District Judge.

This action was brought under the Court's admiralty jurisdiction pursuant to rule 9(h) of the Federal Rules of Civil Procedure. The Plaintiff, an underwriting syndicate at Lloyd's London, seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. sections 2201 and 2202, as to the rights and obligations of the parties concerning reinsurance issued to Glacier General Assurance Company, the reinsured. Glacier is a Montana corporation, which does business in Louisiana. Standard Marine Underwriters, Inc., and Edward G. Brennan, who are also defendants in this action, were the underwriting and managing agents for Glacier and were placing marine insurance for Glacier in 1982. Standard Marine is a Louisiana corporation and Brennan is a Louisiana citizen.

In 1982, Glacier instructed Standard Marine and Brennan to obtain reinsurance for Glacier's marine insurance portfolio. Standard Marine and Brennan contacted A.W. Knott Becker Scott Ltd. ("KBS"), a Lloyd's of London insurance broker, based in London, to obtain the reinsurance for Glacier. (KBS is also a Defendant in this action.) KBS, in order to obtain the reinsurance, contacted the Plaintiff. The Plaintiff authorized KBS to issue a cover note to Standard Marine, which allowed Standard Marine to reinsure certain maritime risks insured by Glacier.

The Plaintiff, Syndicate 420, seeks to have this Court declare null and void the reinsurance issued on the Glacier portfolio. It claims that the binding authority it issued to Standard Marine for the reinsurance was obtained through the misrepresentations of and failure to disclose material facts by representatives of the Defendants Glacier, Standard Marine, Brennan and KBS. For example, Plaintiff alleges that the Defendants failed to disclose that certain insurance policies issued by Glacier, which Plaintiff reinsured, were highly unprofitable, rendering it impossible for Plaintiff to make a profit on the transaction. Plaintiff claims that if it knew of the unprofitable nature of these policies, it would not have reinsured the Glacier portfolio.

In August 1984, by way of its second supplemental and amended complaint, the Plaintiff made all the errors and omissions ("E & O") underwriters of the professional liability policies issued to KBS additional Defendants in this action. Plaintiff did this because, in the event that this Court holds that the reinsurance is not null and void and the Plaintiff is liable to Glacier, Plaintiff seeks a judgment declaring that it is entitled to indemnification from the Defendants, including KBS, and its insurers, for its liability to Glacier. Thus, the KBS E & O insurers were sued under the Louisiana Direct Action Statute for the alleged liability of KBS to Plaintiff. The only issue concerning these insurers is whether they are liable for any judgment obtained against KBS.

Late in 1984, all the E & O underwriters of the errors and omissions policies issued to KBS filed suits in the English High Court of Justice, Queen's Bench Division, Commercial Court, located in London. In the London lawsuits, some of the E & O underwriters seek declaratory judgments that they are not liable to indemnify KBS or Syndicate 420 with respect to the claims made against KBS in this Louisiana action. Some of the E & O underwriters claim that the insurance they issued to KBS is void for nondisclosure or, if valid, that the claims by Plaintiff against KBS are excluded from coverage by virtue of certain express exclusions. Other E & O underwriters seek declaratory judgments from the London Commercial Court that they are not liable to KBS or Syndicate 420 because the claims made by Syndicate 420, in the instant suit, were made after the expiration date of the insurance policies they issued and thus Syndicate 420's claims are not covered by their policies. Thus, the same issue which concerns the E & O underwriters here, whether KBS' E & O insurance covers the claims made by Syndicate 420 in the instant case, is the subject of the London lawsuits.

Presently, all of the E & O underwriters of KBS move this Court to dismiss the Plaintiff's claims against them on the ground of forum non conveniens.[1] That is, the E & O underwriters seek a dismissal on the basis of forum non conveniens, of only the claims asserted against them in this case. They do not seek dismissal of the main part of this action.

The E & O underwriters contend that it would be far more convenient to litigate the issue of E & O coverage of KBS in the London Commercial Court than in this Court. To support this contention, they note that KBS and Syndicate 420 are defendants in the London proceedings; KBS is a Lloyd's broker domiciled in London and is presently in liquidation proceedings in London; Syndicate 420 is a Lloyd's syndicate located in London and is represented by counsel in London; the insurance policies which the E & O underwriters issued to KBS were solicited and negotiated in London by a London brokerage firm; Syndicate 420, KBS and the E & O underwriters are subject to the jurisdiction of the London Commercial Court; the resolution of the insurance coverage dispute concerning the insurance issued to KBS requires the application of English law and, thus, familiarity with English law and with the unique business practices and procedures of Lloyd's of London; all the necessary witnesses and documents concerning this dispute are located in London; and that England has a greater interest in the resolution of the dispute between the E & O underwriters, KBS and Syndicate 420 than the United States.

First, it should be pointed out that this Court has not yet established whether

---

1. There are 29 separate insurers who subscribe to the Lloyd's broker's professional indemnity policy issued to KBS for the period from April 1, 1982 through April 30, 1983 and 41 separate insurers on the KBS' E & O policy for the period of May 1, 1983 through April 30, 1984. Some insurers are on the primary coverage as well as one or more of the excess layers, and some are on the policies for both years. Some of the insurers are represented by the firm of Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn; the others are represented by Hammett, Leake & Hammett. Through their respective counsel, all the E & O underwriters have moved for a dismissal on the ground of forum non conveniens.

or not it has personal jurisdiction over all of the E&O underwriters of KBS, and it has been brought to this Court's attention that some of the underwriters will contest personal jurisdiction over them if they are not dismissed on the ground of forum non conveniens. The Plaintiff contends that this Court should first establish personal jurisdiction before reaching the forum non conveniens issue. This Court disagrees. The Fifth Circuit's recent decision in *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140 (1984), provides strong support for the view that personal jurisdiction need not be established before dismissal of an action because of forum non conveniens. At issue in *Liaw Su Teng* was section 1404(a) of the Judicial Code, which allows a federal district court to transfer a case to a more convenient forum where it might have been brought. The Fifth Circuit stated that "[w]hile ordinarily a court may not take any action against a party over whom it lacks personal jurisdiction, section 1404(a), as interpreted by this circuit, permits the court in which the action is filed to make an initial determination that its forum is not proper even for determining the jurisdictional issue, and it may transfer the case to a proper forum in which all questions, including the threshold one of personal jurisdiction, may be resolved." 743 F.2d at 1145. The Fifth Circuit further explained that the Supreme Court agrees. *See* 743 F.2d at 1147 & n. 26 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)). Thus, if a court can transfer a case even though personal jurisdiction is not established, a court should be able to dismiss on the basis of forum non conveniens under the same circumstances. That is a logical extension of the Fifth Circuit's reasoning in *Liaw Su Teng*.

The Second Circuit's opinion in *Calavo Growers of California v. Belgium*, 632 F.2d 963 (1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 661 L.Ed.2d 809, (1981), lends even more direct support for the holding that personal jurisdiction need not be ascertained in order to dismiss on the basis of forum non conveniens. In *Calavo*, the plaintiff sued 18 foreign insurance underwriters, alleging breach of contract and fraud. On the district court level, the underwriters contested the court's jurisdiction over them and, also, sought a dismissal on the ground of forum non conveniens. The district court found personal jurisdiction over all the underwriters, but dismissed the action on the basis of forum non conveniens. The plaintiff appealed the dismissal on the basis of forum non conveniens; the underwriters cross-appealed the district court's finding of personal jurisdiction. The Second Circuit found it unnecessary to reach the personal jurisdiction challenge because it found that the district court was correct in dismissing the action on the basis of forum non conveniens. *See* 632 F.2d at 966. The Second Circuit was not concerned with establishing personal jurisdiction prior to a forum non conveniens dismissal. Such an approach is practical and makes a great deal of sense.

If a court determines that an action or part of an action should be dismissed on the basis of forum non conveniens, it is a wasteful and unnecessary exercise to make the moving party first contest the court's in personam jurisdiction. This is especially true when, as in the instant case, the Court's determination to grant a forum non conveniens dismissal would not be altered by a finding of personal jurisdiction over the movers. That is, when the reasons for granting a forum non conveniens dismissal are so strong, it is not necessary for the Court to find as an additional basis for its decision that it lacks in personam jurisdiction over the movers.

■ The other threshold issue which concerns this Court is whether it is proper to dismiss only part of an action on the basis of forum non conveniens. The Fifth Circuit does not appear to have spoken much on this issue. However, *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890 (5th Cir.1984), does touch on the issue and lends support for this Court's holding that it is proper to dismiss only part of an action on the basis of forum non conveniens. *See* 742 F.2d at 895. Further-

more, in the instant case, a dismissal of KBS' E & O underwriters on the basis of forum non conveniens will not result in the same issues being litigated by two different courts. Only where litigation will be duplicated should a court be wary of dismissing only part of an action on the basis of forum non conveniens.

Any forum non conveniens discussion must start with *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In *Piper*, the Court explained that, in determining whether or not to dismiss on the basis of forum non conveniens, a court must look at the "private interest factors" affecting the convenience of the litigants and the "public interest factors" affecting the convenience of the forum. 454 U.S. at 241, 102 S.Ct. at 258. The Court listed the following private interest factors for consideration:

(1) the relative ease of access to sources of proof:

(2) availability of compulsory process for attendance of unwilling witnesses;

(3) the cost of attendance of willing witnesses; and

(4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at n. 6. The Court then listed the following public interest factors:

(1) the administrative difficulties flowing from court congestion;

(2) the local interest in having localized controversies decided at home;

(3) the interest of having a case heard by the forum familiar with the law that must be applied; and

(4) the avoidance of unnecessary conflict of law problems or of problems in the application of foreign law.

*Id.* The *Piper* Court declared that "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience support his choice." 454 U.S. at 249, 102 S.Ct. at 262.

The Fifth Circuit has also provided guidance in determining the forum non conveniens issue. It has explained that

Most pressing are the "private" interests of the litigants, including access to sources of proof and enforceability of judgments. Also to be considered are "public" interests including the relationship between the forum and the dispute and the familiarity of the forum with the relevant law. Although "plaintiff's choice of forum should rarely be disturbed," dismissal may be necessary in the interests of convenience and justice if "the balance [of public and private interests] is strongly in favor of the defendant['s]" choice of a different forum.... Justice would not be subserved by the retention of jurisdiction in such cases. The court would be forced to expend resources to review a dispute over which its constituents have no interest and the defendant would be restricted in presenting his defense.

*Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231, 1235 (5th Cir.1983) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

A balancing of the private and public interest factors weighs strongly in favor of the E & O underwriter's choice of a London forum to resolve the dispute over their coverage of KBS. This is one of those cases, as described in *M/V Tel Aviv, supra,* where justice would not be served by the retention of this Court's jurisdiction over the dispute between the E & O underwriters, KBS and Syndicate 420.

■ An examination of the private interest factors teaches that it would be far more convenient for the parties to litigate their narrow coverage dispute in London. Syndicate 420 does not dispute that all the relevant documents and witnesses concerning the E & O underwriters insurance coverage dispute are located in London. All the parties to the dispute, the E & O underwriters, KBS and Syndicate 420 are firms or individuals located in London and, these parties are represented by English counsel.

Furthermore, Syndicate 420 does not deny that the witnesses and documents relevant to the E & O underwriters insurance coverage dispute are not the same witnesses and documents relevant to main dispute in this action between Syndicate 420, Glacier, Standard Marine, Brennan and KBS. The main demand claims and the E & O coverage claims are separate and distinct. Additionally, the process of using letters rogatory to request the courts in London to issue subpoenas for depositions of foreign witnesses is a cumbersome, expensive and time-consuming process that should be avoided when possible. Further, the power of Federal courts in the United States to compel unwilling foreign witnesses to appear in this country to testify at trial is, indeed, limited. The E & O underwriters might well be restricted in presenting their defense in this forum because of these discovery problems. Under such circumstances, justice is better served by allowing the parties to resolve the dispute in a forum where the ease of access to sources of proof is more accommodating and the court can compel the production of all relevant documents and witnesses.

Of great importance is the avoidance of the potential of duplicative litigation over the same dispute. If both the London Commercial Court and this Court litigated the E & O underwriters insurance coverage dispute the needless duplication of proof and waste of judicial resources would result.[2] *See Calavo Growers of California v. Belgium*, 632 F.2d 963, 967–68 (2d Cir. 1980). In this respect, it should be noted that there is no guaranty that the London Commercial Court would stay the London actions if this Court decided to adjudicate the E & O underwriters insurance coverage dispute here. *See* Affidavit of Solicitor Boxer at pp. 14–15.

Another serious problem presented here is the enforceability of a judgment rendered by this Court against the E & O underwriters. Pursuant to the English Civil Jurisdiction and Judgments Act 1982, a defendant with assets in England who is sued abroad may appear in a foreign forum, such as the United States to contest in personam jurisdiction or to request a dismissal on the ground of forum non conveniens without subjecting his English assets to the danger of execution on a foreign judgment. *See* Affidavit of Solicitor Boxer at pp. 22–24. According to section 33(1) of that Act, any judgment rendered by this Court against the E & O underwriters would not be automatically enforceable in England if such a limited appearance is made. Indeed, the E & O underwriters have so limited their appearance in this case. If the E & O underwriters convince the English courts that this Court incorrectly asserted personal jurisdiction ovr them or should have dismissed them on the basis of forum non conveniens, the judgment of this Court against them would probably be unenforceable. Solicitor Boxer states in his affidavit, that "[t]he English Court is not bound to accept a finding of ... [t]his Court as res judicata on the jurisdictional issue or on the forum non conveniens issue." *See* Affidavit of Solicitor Boxer at p. 24; *see also* Affidavit of Solicitor Simpson at p. 12. In light of the potential problems that Syndicate 420 will encounter in enforcing a judgment against the E & O underwriters in England, it is far more practical for the London Commercial Court to adjudicate the respective liabilities of the parties as to that dispute.

This Court also finds that the "public interest factors," as they apply to the facts here, weigh heavily in dismissing the E & O underwriters insurance coverage dispute on the ground of forum non conveniens. A dispute among London insurers and brokers, which involves insurance policies solicited, negotiated and executed in London, should, without doubt, be resolved in London. *See Calavo Growers*, 632 F.2d at 967; *see also Transamerica ICS, Inc. v. Tugu Insurance Co.*, 588 F.Supp. 1301, 1304 (S.D.N.Y.1984). England's interest in the

---

**2.** Furthermore, this Court should avoid the possibility of inconsistent judgments concerning the E & O underwriters insurance coverage dispute that could result if both the London Court and this Court adjudicated the dispute.

resolution of the E & O underwriters insurance coverage dispute is also far greater than this forum's interest in the dispute. Syndicate 420, the party seeking indemnity from the E & O underwriters, is not an American entity, although some individual members of the syndicate reside in the United States. It is clear from Syndicate 420's own admission that it is an organization of underwriters at Lloyd's London and is domiciled in the United Kingdom. *See* Plaintiff's Complaint p. 2 (Document No. 1 in District Court's Record). Most of the E & O underwriters and KBS are English entities and individuals. Accordingly, the London Commercial Court has a great interest in insuring that the conduct of these parties did and does not violate English law and that the innocent party is compensated in accordance with that law. The only interest that this forum has in the E & O underwriters insurance dispute is based on its fortuitous connection with the main part of this action involving American Defendants. Under such circumstances, it would be inequitable to drag a dispute that does not otherwise concern this forum into this Court.

In addition, this Court cannot conceive of any law but English insurance law applying to the E & O underwriters insurance coverage dispute. The Restatement (Second) of Conflicts provides that, in contract cases, the applicable law is the place of contracting and the domicile or place of incorporation of the parties. Restatement (Second) of Conflicts section 188 (1971). As previously explained, Syndicate 420, KBS and most of the E & O underwriters are English entities or individuals and the insurance policies allegedly covering KBS' liability to Syndicate 420 were negotiated and executed in London. The necessity of applying foreign law favors a dismissal. *See Piper Aircraft*, 454 U.S. at 260 n. 20, 102 S.Ct. at 268 n. 29.

The Commercial Court in London is far more familiar with and specialized in the application of English insurance law than this Court. Also, the London Court is far better acquainted with the practices and customs of Lloyd's of London and, in general the English insurance industry than this Court. Moreover, as covered by Solicitor Boxer in his affidavit both English insurance law and the Lloyd's insurance business differ significantly from their counterparts in this country. *See* Affidavit of Solicitor Boxer at pp. 2–8 & 15–19. Accordingly, this Court must show great deference to the London Commercial Court; it is only wise to refrain from applying the law of a foreign country when one recognizes that the courts of that country are better able to do so.

█ This Court also finds that Syndicate 420's choice of forum does not deserve the usual strong presumption in favor of a plaintiff's choice of forum. *See Piper Aircraft*, 454 U.S. at 255, 102 S.Ct. at 265–66. First, the law is now quite clear that a foreign plaintiff's choice of forum deserves less deference than that given to the choice of forum of an American citizen or resident. *See id; see also Pacific Employers Insurance Co. v. M/V CAPT. W.D. CARGILL*, 751 F.2d 801 (5th Cir.1985). Syndicate 420, however, makes the bare unsupported allegation here that it had no choice but to sue in this forum because the American Defendants are not amenable to suit in England. Even if Syndicate 420 is correct, its choice of this forum would still not defeat a dismissal of the E & O underwriters on the basis of forum non conveniens. Whatever degree of deference should be afforded the Plaintiff's choice of forum here is overcome by the balancing of the "private and public interest factors," which strongly point towards resolving the E & O underwriters insurance coverage dispute in London. *See Piper Aircraft*, 454 U.S. at 255, 102 S.Ct. at 265–66 & 268.

The E & O underwriters have also proven to this Court's satisfaction that the London Commercial Court is an adequate and available alternative forum in which to resolve the E & O underwriters insurance coverage dispute. Indeed, the Plaintiff is currently a party in the London lawsuits brought by the E & O underwriters to resolve the dispute. Thus, Plaintiff can

present its argument in the London Commercial Court that the underwriters are obligated to indemnify it for KBS' errors and omissions. And, of course, any judgment in favor of the Plaintiff rendered by the London Commercial Court would be given effect by this Court.

Furthermore, this Court is persuaded by the affidavits of Solicitors Boxer and Simpson that the London Commercial Court will proceed to an expeditious determination of the E & O underwriters suit. *See* Affidavit of Solicitor Boxer at pp. 11–12; Affidavit of Solicitor Simpson at p. 11. Finally, it should be noted that Syndicate 420 does not argue that it cannot bring its claims against the E & O underwriters in the London Commercial Court. Indeed, the English Third Parties Rights Against Insurers Act of 1930 appears to provide Syndicate 420 with an action against the E & O underwriters in England. *See* Affidavit of Solicitor Simpson at p. 6.

The dismissal of the E & O underwriters on the ground of forum non conveniens is subject to the following conditions: (1) all the E & O underwriters of KBS involved in this action consent to either being sued by Plaintiff in the courts of England or to actively pursuing the lawsuits that they have already instituted in the London Commercial Courts in order to resolve the E & O underwriters insurance coverage dispute; (2) without waiving any arguments or defenses that go to the merits, the E & O underwriters consent to waive all jurisdictional and statute of limitation defenses that can be made under English law; and (3) the E & O underwriters consent to be bound by the decision or decisions of the English courts as to their liability to indemnify for the errors and omissions of KBS and the decision of this Court against KBS, if such decisions are rendered.

For the foregoing reasons and based on the above mentioned conditions, the motions of the E & O underwriters for a dismissal of the Plaintiff's claims against them on the basis of forum non conveniens is GRANTED.