**Gerhard ZINSLER, Plaintiff,**

v.

**MARRIOTT CORPORATION and Girozentrale Und Bank Der Osterreichischen Sparkassen Ag, Defendants.**

**Civ. No. H–83–1664.**

United States District Court,
D. Maryland.

April 10, 1985.

Warren K. Kaplan, Douglas B. Mishkin and Melrod, Redman and Gartlan, Washington, D.C., Stanton J. Levinson, Baltimore, Md., Daniel M. Litt, Rockville, Md., for plaintiff.

William F. Ryan, Jr., M. Natalie McSherry and Whiteford, Taylor, Preston, Trimble and Johnston, Baltimore, Md., for defendant Marriott Corp.

James E. Akers, Ruth A. Bourquin and Sullivan and Cromwell, Washington, D.C., and Andrew Jay Graham and Kramon & Graham, P.A., Baltimore, Md., for defendant Girozentrale Und Bank Der Osterreichischen Sparkassen AG.

ALEXANDER HARVEY, II, District Judge.

An Austrian citizen is here suing an Austrian bank and a Delaware corporation seeking damages for breach of contract and fraud. The suit arises out of a dispute concerning a promoter's or finder's fee allegedly due the plaintiff for his part in procuring the formation of a joint venture between the defendants for the building of a luxury hotel in Vienna, Austria. The primary question presently before the Court is whether this action should go forward here or in an appropriate Austrian court.

The plaintiff is Dr. Gerhard Zinsler (hereinafter "Zinsler"), a citizen of Austria who presently resides in Switzerland.[1] One of the defendants is Girozentrale Und Bank Der Osterreichischen Sparkassen AG (hereinafter "Girozentrale" or "the Bank"), an Austrian bank with its principal place of business in Vienna. The other defendant is Marriott Corporation (hereinafter "Marriott"), a corporation organized under the laws of the State of Delaware with its principal place of business in Maryland. Jurisdiction is asserted on the basis of diversity of citizenship, 28 U.S.C. § 1332 and Maryland's Long Arm Statute, Md.Cts. & Jud.Proc.Code Ann. § 6–103.

During the years 1978–1979, Zinsler, Marriott, Girozentrale and other persons engaged in various discussions and negotiations relating to the building of and financing of a luxury hotel to be constructed in Vienna, Austria. The Bank was to provide financing and other services in Austria, while Marriott was to furnish to the project its expertise in the hotel management business. Several different sites in Vienna were considered for the location of the hotel. Initial discussions centered about the so-called Schwarzenbergplatz site.[2] Eventually it was decided that the hotel would be built on property which the Bank owned in Vienna, referred to in these proceedings as the Parkring site. In October of 1979, Marriott and Girozentrale entered into an agreement for the building of the luxury hotel on the Parkring site. Thereafter, defendants executed a final Joint Venture Agreement, and the hotel is being or has been built in Vienna. An Austrian subsidiary was formed by Marriott to undertake its obligations under the agreement.

At issue here is Zinsler's role in the formation of the Girozentrale-Marriott joint venture. Plaintiff Zinsler asserts that he is entitled to a promoter's or finder's fee of 3% of the total development cost which he allegedly earned by introducing the parties and by working with them in the preliminary stages of the negotiations which led to the joint venture. Plaintiff alleges that he spent many thousands of hours and dollars in promoting the hotel project and he contends that he was promised the fee recognized by Austrian law and custom if the hotel project came to fruition. Defendants contend that Zinsler acted only as a kind of real estate broker for the Schwarzenbergplatz site which was not the ultimate location of the hotel. Accordingly, they assert that plaintiff is entitled to no fee in connection with the formation of the joint venture which undertook to build the hotel at the Parkring site. In his three-count complaint, plaintiff seeks compensatory and punitive damages based on theo-

---

1. Plaintiff is a lawyer and a member of the Bar of Austria.

2. That property was owned by an Austrian company known as Infrabau.

ries of breach of contract, quantum meruit and fraud.[3]

Presently before the Court are motions to dismiss filed by both defendants. Defendant Girozentrale has filed a motion to dismiss the complaint for lack of *in personam* jurisdiction and on the basis of *forum non conveniens.* Defendant Marriott has filed a motion to dismiss based solely on the doctrine of *forum non conveniens.* Memoranda, affidavits, and exhibits in support of and in opposition to these motions have been filed by the parties and carefully reviewed by the Court. Extensive discovery relating to the issues raised by the pending motions has been undertaken by the parties. Oral argument has been heard in open Court. For the reasons to be stated herein, the Bank's motion to dismiss for lack of *in personam* jurisdiction will be denied, and the motions of both defendants to dismiss on the basis of *forum non conveniens* will be granted.

## I

### *Jurisdiction*

■ Discussion of the Bank's motion to dismiss the complaint for lack of *in personam* jurisdiction need not be extensive.[4] In a diversity case like this one, a federal court has the power to exercise control over a non-resident defendant if (1) an applicable state statute confers jurisdiction and (2) the assertion of jurisdiction comports with the constitutional requirement of due process. *Bowman v. Curt G. Joa,* 361 F.2d 706 (4th Cir.1966).

■ On the record developed to date, this Court concludes that it may exercise *in personam* jurisdiction over defendant Girozentrale under the Maryland Long Arm Statute, Md.Cts. & Jud.Proc.Code Ann., § 6–103(a) and (b)(1). The Joint Venture Agreement between Marriott and Girozentrale was executed in London in July, 1982. Before then, officials of Girozentrale participated in meetings and negotiations which took place at Marriott's head-

quarters in Maryland on several different occasions. Correspondence and telexes were exchanged between the Bank in Austria and Marriott officials in Maryland in which various aspects of the joint venture were discussed. Documents prepared by Marriott's legal staff were forwarded to Austria and revised from time to time. On October 15, 1979, officials of the Bank came to Marriott's headquarters to execute a "Protocol" which set forth the basic understanding between the defendants concerning the structure of their joint venture. In April of 1982, officials of Girozentrale met at Marriott's headquarters to finalize the terms of the formal Joint Venture Agreement prior to its execution in London in July, 1982.

These facts are sufficient to indicate that Girozentrale was transacting business within the State within the meaning of the Maryland Long Arm Statute. The Bank purposefully availed itself of the privilege of conducting activities within Maryland, thus invoking the benefits and protections of Maryland laws. *See Hanson v. Deckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980).

■ Moreover, the allegations of the complaint and the facts relied upon by plaintiff in support thereof indicate that plaintiff's claims arise from activities in which the Bank participated in Maryland. The Bank argues that any role of plaintiff as a promoter or finder related solely to the development of a hotel on the Schwarzenbergplatz site, that any contacts which the Bank had with Marriott in Maryland related solely to the formation of a joint venture for the construction of a hotel on the Parkring site and that accordingly plaintiff's claim against the Bank does not "arise from" the Bank's transaction of business in Maryland. But this contention raises questions relating to the merits of

---

3. Plaintiff is here seeking $1,500,000 in compensatory damages and $10,000,000 in punitive damages.

4. Only the Bank seeks dismissal on the ground of lack of jurisdiction. This Court clearly has *in personam* jurisdiction over defendant Marriott.

the dispute between the parties in this case. *See Groom v. Margulies,* 257 Md. 691, 703–704, 265 A.2d 249 (1970). The relevant facts are sharply disputed by the parties, and the issue presented can be finally resolved only after all the evidence is considered at the trial. A plaintiff need make only a *prima facie* showing of jurisdiction to be permitted to go forward in a case such as this one, even though the plaintiff must ultimately establish jurisdiction by a preponderance of the evidence. *Marine Midland Bank v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Such a *prima facie* showing suffices to defeat a motion to dismiss, notwithstanding any controverting presentation by the moving party. *Id.*

On the record here, this Court concludes that plaintiff has made a *prima facie* showing of this Court's jurisdiction over the Bank. It is true that the Bank's contacts with Maryland were minimal. Nevertheless, they were sufficient to meet the requirements of the Maryland Long Arm Statute that the Bank purposefully availed itself of the privilege of acting in this State and that the cause of action arises from the Bank's activities here. *See McLaughlin v. Copeland,* 435 F.Supp. 513, 523 (D.Md. 1977). This Court further concludes that the Bank's acts in Maryland had a substantial enough connection with this State to make reasonable the exercise of jurisdiction over it. Accordingly, the assertion of jurisdiction in this case would comport with the constitutional requirements of due process. *See McLaughlin v. Copeland, supra* at 524.

For these reasons, this Court concludes that it may exercise personal jurisdiction over defendant Girozentrale in this case. The Bank's motion to dismiss on grounds of lack of *in personam* jurisdiction will therefore be denied.

## II

### *Forum Non Conveniens*

The principal issue presented by the pending motions is whether this case should go forward in this Court or in an appropriate Court in Vienna, Austria. Both defendants assert that the pertinent facts require dismissal of this action on grounds of *forum non conveniens.* Following a review of the record here, this Court would agree.

The factors to be considered by a Court in deciding whether or not to dismiss a complaint on the ground of *forum non conveniens* were discussed by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed.2d 1055 (1947) and more recently in *Piper Aircraft Company v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Even when a Court has jurisdiction of a dispute, it may apply principles of *forum non conveniens* and, under appropriate circumstances, resist imposition upon its jurisdiction. *Gulf Oil Corp., supra,* 330 U.S. at 507, 67 S.Ct. at 842. A *forum non conveniens* determination is committed to the sound discretion of the trial court which is required to consider all relevant public and private interest factors and undertake a reasonable balancing of these factors. *Piper Aircraft Co., supra,* 454 U.S. at 257, 102 S.Ct. at 266. In the *Gulf Oil Corp.* case, the Supreme Court listed the following private interest factors (330 U.S. at 508, 67 S.Ct. at 843):

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained. The Court will weigh relative advantages and obstacles to fair trial.

In listing the public interest factors which a court should also consider in deciding whether or not to apply the doctrine, the Supreme Court in *Gulf Oil Corp.* further stated (330 U.S. at 508–509, 67 S.Ct. at 843):

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litiga-

tion is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

■ When the facts of this case are considered in the light of both these private interest factors and these public interest factors, this Court concludes that this action should be dismissed on the ground of *forum non conveniens*. Put succinctly, both the parties and the cause of action have substantial connections with Austria. The most convenient forum for the resolution of this dispute is therefore the Commercial Court of Vienna, located in the Austrian City where the hotel in question is to be built.

The plaintiff himself is an Austrian citizen who resides in Switzerland. Indeed, plaintiff is an attorney and a member of the Bar of Austria.[5] Girozentrale is an Austrian Bank with its principal place of business in Vienna. The joint venture was formed for the construction of a luxury hotel in Vienna. Defendant Marriott has formed an Austrian subsidiary corporation to carry out its obligations under the various agreements reached between it and the Bank. An interpretation by the court of Austrian law and custom is at the heart of plaintiff's claims.

■ Relying on *Gulf Oil Corp.*, plaintiff asserts that there is a strong presumption in favor of a plaintiff's choice of forum. However, this presumption is weakened when the plaintiff is foreign. *Ullah v. Canion Shipping Co., Ltd.*, 589 F.Supp. 552 (D.Md.1984), *aff'd* 755 F.2d 1116 (4th Cir.1985). The doctrine of *forum non conveniens* has been recognized by this Court as having particular vitality when the more convenient forum is a foreign country rather than another federal district court. *Grodinsky v. Fairchild Industries, Inc.*, 507 F.Supp. 1245, 1248 (D.Md.1981). As the Supreme Court pointed out in *Piper Aircraft Company*, a foreign plaintiff's choice deserves less deference than that of a plaintiff who is a United States citizen or resident. 454 U.S. at 256, 102 S.Ct. at 266. Indeed in that case, the plaintiff was the representative of the estates of several Scottish citizens who had been killed in an air crash which took place in Scotland. Even though both defendants were American corporations, the Supreme Court upheld the trial court's dismissal of the action on the ground of *forum non conveniens.*

On balance, the private interest factors point to Vienna as the appropriate forum for resolving this dispute. A key witness is Felix Hasenohrl, the original architect for the project, who introduced Zinsler to Bank officials. In addition, representatives of Infrabau, as well as of Girozentrale, will testify at the trial of this case. All of these witnesses are located in Austria and may not be compelled by process to attend a trial in this district.

In opposing the pending motion, plaintiff first asserts that the testimony of Infrabau witnesses is not relevant to the issues presented in this case. Although such testimony may not be pertinent to plaintiff's theory of the case, it clearly would be relevant to and necessary for consideration by the court of the defenses asserted herein by both the Bank and Marriott. In its arguments advanced in opposition to the pending motion, plaintiff overlooks the inconvenience and prejudice to defendants

---

**5.** Plaintiff asserts that he no longer practices law in Austria. Nevertheless, his Austrian citizenship and his obvious familiarity with Austrian courts and Austrian law are certainly factors to be considered by this Court in deciding whether this dispute should be resolved "at home."

which would result if they were compelled to present the testimony of Hasenohrl, Infrabau representatives, and Bank officials at a trial in this Court.

Next, plaintiff points out that three former employees of Marriott who met with Zinsler and Girozentrale representatives at various times could not be compelled to testify in an Austrian court.[6] But the production of these witnesses would appear to be of more concern to the defendants than to the plaintiff. The plaintiff will be undertaking to prove the existence of the alleged oral agreement primarily by his own testimony and the introduction of pertinent documents. Defendants are the parties who would be prejudiced if Urgo, Gomes and Butts could not be compelled to appear at the trial in Austria and present their versions of the conversations in question.[7]

Although Marriott documents are located here, the Bank's documents are in Austria. Many of these have, as plaintiff points out, now been translated and produced as a result of discovery undertaken in this case to date. However, many other documents are written in German, have not been produced or translated, and could presumably be presented to the Austrian court without the necessity that the parties incur additional translation expenses. Insofar as the enforceability of any judgment is concerned, a judgment secured by the plaintiff against the Bank in this Court would not be enforceable here or in Austria. On the other hand, judgments secured against both defendants in the Commercial Court of Vienna would be enforceable against both parties in Austria and against Marriott here.[8]

Consideration of the public factors likewise points to a trial in Austria. There is

little doubt that the Commercial Court of Vienna is an alternative forum for the resolution of this dispute. Jurisdiction clearly exists as to defendant Girozentrale, and under Austrian law, since Marriott has formed an Austrian subsidiary, Marriott likewise may be sued in Vienna. Moreover, both defendants have represented in open Court that if plaintiff now sues them in the Commercial Court of Vienna, they will not interpose any objection based on an applicable statute of limitations which could not have been interposed in this Court. Since defendants are prepared to defend this case on the merits in Austria, that more appropriate forum is available for the resolution of this dispute.

Austrian law and custom is the basis for plaintiff's claim that he is entitled to a promoter's fee. The oral contract between plaintiff and the Bank was not only allegedly entered into in Austria but was also to be performed there. The joint venture was formed to construct a hotel in Vienna, and the Joint Venture Agreement itself explicitly provides that Austrian law will be controlling.[9] Clearly, a localized controversy of this sort should be decided "at home." See *Gulf Oil Corp., supra*, 330 U.S. at 509, 67 S.Ct. at 843. The home base for this controversy is Vienna. A Maryland jury should not be burdened with the duty "that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp., supra* at 508–509, 67 S.Ct. at 843. Certainly, the Commercial Court of Vienna would be more at home with the law governing this dispute. As Judge Friendly observed in *Conte v. Flota Mercante del Estado*, 277 F.2d 664, 667 (2d Cir.1960):

6. The witnesses in question, Donald J. Urgo, Albert Gomes and Allison Butts, are no longer employed by Marriott.

7. In any event, the depositions of these three witnesses have now been taken. It will be for the Austrian court to decide whether these depositions can be used at trial.

8. Since it has formed an Austrian subsidiary, with assets in that country, Marriott is subject to the jurisdiction of the Commercial Court of Vi-

enna. Moreover, any judgment secured by plaintiff against Marriott in Austria would be enforceable in Maryland pursuant to § 10–701, *et seq.*, Md.Cts. & Jud.Proc.Code Ann.

9. There is no merit to plaintiff's suggestion, made in oral argument but not advanced in any of the voluminous briefs submitted, that Maryland law may be controlling as to his claim of fraud. Most of the alleged misrepresentations occurred in Austria, and they all related to the contract to be performed there.

[T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

■ It is apparent that plaintiff chose this forum for his suit because of his belief that he would achieve a more favorable result if this Court's law and procedures were applied. However, in *Piper Aircraft Company, supra,* the Supreme Court made it abundantly clear that dismissal of a suit on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery. If the result were otherwise, foreign litigants with little reason to resort to a court of this country, would be encouraged to add their suits to those already clogging our dockets. As the Supreme Court noted in *Piper Aircraft Company, supra,* United States Courts are already attractive to foreign plaintiffs and would become even more attractive if courts of this country did not decline to adjudicate essentially foreign litigation. 454 U.S. at 252, 102 S.Ct. at 264. *See also, Ullah v. Canion Shipping Company, Ltd., supra* at 560. The ability of federal courts in the United States to give speedy justice in matters properly before them would be substantially impaired to the prejudice of all "if they took it upon themselves also to resolve the disputes of the rest of the world." *Cruz v. Maritime Company of Philippines,* 549 F.Supp. 285, 290 (S.D.N.Y.1982), *aff'd* 702 F.2d 47 (2d Cir.1983).

In opposing the pending motion, plaintiff asserts that his discovery is now complete and that this matter will be unduly delayed if this Court rules that this dispute must be tried in Austria. This contention is disingenuous. The Bank's motion to dismiss was filed on August 29, 1983. That same day, the Bank filed a motion to stay discovery. When he filed his opposition to the motion to dismiss, plaintiff in addition filed a motion to stay determination of the motion to dismiss until discovery on jurisdictional facts could be completed. In seeking to stay all discovery and in opposing plaintiff's motion to stay determination of the motion to dismiss until discovery on the jurisdictional facts could be undertaken, the Bank asserted that its motion to dismiss could be decided on the facts already developed, and that additional discovery would be an unnecessary expense and burden on all parties. In its Memorandum and Order of April 27, 1984, this Court denied the Bank's motion to stay discovery and granted plaintiff's motion to stay a ruling on the Bank's motion to dismiss until discovery on the jurisdictional issues was completed. Plaintiff then proceeded with extensive discovery. Interrogatories and requests for the production of documents were filed and a number of witnesses were deposed.[10] Necessarily, discovery relating to the jurisdictional facts overlapped with discovery on the merits.

Under these circumstances, plaintiff cannot be permitted to rely on the fact that its discovery is now completed as a reason for this Court to go forward with the trial here. Defendants' discovery is only in its early stages. In permitting plaintiff to fully discover facts pertinent to the issues of personal jurisdiction and *forum non conveniens* presented by defendants' motions to dismiss, this Court has liberally applied discovery rules so as to permit plaintiff to be able to present all pertinent facts which supported his position. Plaintiff can hardly be now heard to say that because the Court has permitted him to engage in broad-ranging discovery, the motion to dismiss on the ground of *forum non conveniens* should be denied.

---

**10.** There were many discovery disputes, requiring rulings by the Court and conferences held pursuant to Rule 16(b), F.R.Civ.P.

Plaintiff complains that the ultimate trial of this case will be unnecessarily delayed if he is now required to file a new suit in Austria. But plaintiff will hardly be required to "start all over again" in Austria. As noted, there has been extensive discovery undertaken to date in this case, and much of this discovery relates to the merits of the dispute between the parties.

The parties have submitted conflicting affidavits relating to the date when this case might be reached for trial in the Commercial Court of Vienna. Whatever might be the status of the docket in that Court, the trial of cases in this Court has in recent years been greatly delayed by mass tort litigation.[11] Assuming a trial which would last for approximately two to three weeks, this case could probably not be assigned a trial date for at least 18 to 20 months. It appears from the record here that a trial in Austria could likewise be held within that period of time.

When all pertinent facts here are weighed and considered, this Court concludes that the balance in this case is strongly in favor of the defendants. An Austrian citizen is here seeking to recover from parties to an Austrian joint venture a fee arising under Austrian law and custom for services performed in connection with the construction of a hotel in Vienna. The appropriate forum for the resolution of this dispute is the Commercial Court of Vienna.

### III

#### Conclusion

For the reasons stated, the motion of defendant Girozentrale to dismiss the complaint on the ground of lack of *in personam* jurisdiction will be denied. The motions of both defendants to dismiss the complaint on the ground of *forum non conveniens* will be granted. A separate Order will be prepared by the Court dismissing this action as to both defendants, with costs.

11. In early 1985, there were pending in this Court 303 asbestos cases and 242 Dalkon Shield cases, many of which involved multiple parties plaintiff.