**Edwin MUNSELL and Elsie Munsell, Plaintiffs,**

v.

**LA BRASSERIE MOLSON DU QUEBEC LIMITÉE, d/b/a Molson Breweries and Jean Rouleau, Defendants.**

**No. CV 84–4674.**

United States District Court, E.D. New York.

Oct. 4, 1985.

---

DiLorenzo & Weber, Hauppauge, N.Y., for plaintiffs.

D'Amato & Lynch, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Edwin Munsell and his wife Elsie commence this action for personal injuries against Jean Rouleau and La Brasserie Molson Du Quebec, Limitée (La Brasserie), which plaintiffs denominate as "do-ing business as Molson Breweries." Plaintiffs are citizens of New York, and presumably the United States. La Brasserie and Mr. Rouleau are alleged to be citizens of Canada.

In November 1983 Mr. Rouleau, an employee of La Brasserie, was operating a towmotor hilo lift vehicle on the premises of La Brasserie in Montreal, Quebec, Canada. At that time Mr. Munsell was employed as a truckdriver for Clare Rose, Inc., and was at La Brasserie picking up a truckload of beer. During Mr. Munsell's visit to La Brasserie on November 14, 1983 Mr. Rouleau allegedly ran over Mr. Munsell's right ankle and foot with the hilo lift vehicle.

In December 1984 plaintiffs commenced this lawsuit, serving both defendants in Montreal, Canada. Defendants now move this Court for dismissal of the action for lack of personal jurisdiction over the defendants, Rule 12(b)(2), Fed.R.Civ.P., and *forum non conveniens.*

### I.

This is a tort claim not arising under federal law and before this Court because of diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(2). Therefore, this Court must look to the New York long-arm statutes [1] to sustain personal jurisdiction over the defendants. *Arrowsmith*

---

1. § 301. Jurisdiction over persons, property or status.

    A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.

§ 302. Personal jurisdiction by acts of non-domiciliaries.

    (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

    1. transacts any businesses within the state; or

    2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

    3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

    (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

    4. owns, uses or possesses any real property situated within the state.

    (b) Effect of appearance. Where personal jurisdiction is based solely upon this section, an appearance does not confer such jurisdiction with respect to causes of action not arising from an act enumerated in this section.

*v. United Press International*, 320 F.2d 219 (2d Cir.1953).

The Court first addresses personal jurisdiction over Mr. Rouleau. Defendant Rouleau is undisputedly a citizen of Canada and not found within the state of New York. The parties also agree that the events that caused Mr. Munsell's injuries occurred exclusively in Canada. Clearly, there is no basis for *in personam* jurisdiction over Mr. Rouleau based on the "doing business" provision of the long-arm statute. N.Y.CPLR § 301 (McKinney 1972). Nor is there any showing that Mr. Rouleau transacts any business, owns property, or committed a tort within New York. N.Y. CPLR § 302(a)(1–2, 4). While it is alleged that Mr. Rouleau committed a tortious act outside the state causing injury to a New York citizen, that is not enough for long-arm jurisdiction under § 302(a)(3). For in addition to the fact that defendant has not been shown to derive revenue from New York state, interstate, or international commerce, strictly speaking the injury to plaintiff was not suffered in New York, but in Canada. And Mr. Munsell's New York citizenship alone does not suffice to establish *in personam* jurisdiction under § 302(a)(3). *Black v. Oberle Rentals, Inc.*, 55 Misc.2d 398, 285 N.Y.S.2d 226 (Sup.Ct. Onondaga County 1967).

Accordingly, the Court concludes that it lacks personal jurisdiction over defendant Rouleau and dismisses the action as to him.

## II.

Personal jurisdiction over defendant La Brasserie is a more difficult question. According to defendant's counsel, La Brasserie is a brewery incorporated in Quebec, Canada with its only place of business in Montreal. It is also a wholly-owned subsidiary of the Molson Companies, Limited (Molson Companies). Molson Companies has ten breweries in Canada, including La Brasserie. Another Canadian corporation, Molson Breweries of Canada, Limited (Molson Breweries) is also a wholly-owned subsidiary of Molson Companies. Finally, Oron, Inc. is an indirectly wholly-owned subsidiary of Molson Companies incorpo-

rated in Delaware. In turn, Martlet Importing Company (Martlet) is a New York corporation and wholly owned by Oron.

Martlet imports Molson-brand ale and beer to New York and the New England states. It does this by placing orders with Molson Breweries. Molson Breweries fills the orders for imports to New York from La Brasserie. As noted earlier, plaintiffs served the summons and complaint on La Brasserie in Montreal. They now seek to base personal jurisdiction on Martlet's New York presence and incorporation.

Under N.Y.CPLR § 301 (McKinney 1972) a New York court may sustain personal jurisdiction over a foreign corporation if that corporation is doing business within the state, as interpreted by a large body of case law. This is in contrast to the principle of acquiring *in personam* jurisdiction over non-domiciliaries based on their acts as provided in § 302. Fundamentally, § 301 is a presence test requiring business activity with a fair measure of permanence and continuity. CPLR § 301 *Practice Commentaries* C301:2 (McKinney 1972). For purposes of § 301, an out-of-state corporation may be deemed to be doing business within New York through an affiliate. This is the theory proffered by the plaintiffs to support *in personam* jurisdiction over La Brasserie.

There are two recognized bases for establishing personal jurisdiction over a foreign corporation through the presence of an affiliate within New York. In essence these are analytical frameworks for attributing or imputing the business activities of the in-state affiliate to the out-of-state corporation. The first basis is termed piercing the corporate veil. Under this analysis personal jurisdiction is established by showing that the subsidiary is merely an instrumentality of the parent corporation, which controls its day-to-day operations, management, and finances. In short, when the subsidiary does not have a genuinely separate corporate identity, but more accurately functions as a division of the parent corporation, the parent corporation can be reached through the subsidiary, or *vice ver-*

*sa,* to sustain personal jurisdiction. *Id.* *Practice Commentaries* C301:3(1).

The second basis for *in personam* jurisdiction through an affiliate is to establish the existence of an agency relationship. The standard for inferring an agency relationship is whether the affiliate present in New York is operating solely for the benefit of the out-of-state affiliate, *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Factors of separate corporate identity and independent profits are important considerations in determining agency.

It is the second ground of agency on which plaintiffs seek to base *in personam* jurisdiction over La Brasserie.[2] Specifically, they assert that Martlet is the regional agent for La Brasserie. In support of this contention plaintiffs' counsel submits an affidavit attesting to information he elicited from an officer of Molson Breweries to the effect that Martlet and "the 'Molson Brewery' located in Quebec, Canada are the same company" (Affidavit of William E. Weber ¶ 4). The same officer is quoted as saying that Martlet only does business with the brewery (Aff. ¶ 4). Ostensibly reference to "the brewery" and "Molson Breweries" means La Brasserie.

The corporate configuration in this case presents an unusual factual issue. Molson Companies is the parent corporation and Molson Breweries, La Brasserie, and Oron are sibling subsidiaries. In addition, Oron is the parent corporation to Martlet. Domestic beer orders are placed with Martlet, which conveys them to Molson Breweries, which then places orders with La Brasserie, and perhaps other of the subsidiary breweries. This is not the conventional parent-subsidiary nor affiliate to affiliate relationship.

While defendant's counsel has made it clear that Molson Breweries, La Brasserie, and Martlet are not one and the same, they have not put forward facts that would convince the Court that there is no basis for attributing Martlet's business activities to its sibling subsidiary La Brasserie. This is not to say that it is a defendant's burden to make an affirmative showing that there is no basis for personal jurisdiction. But where all the facts of a web-work of corporations are uniquely within defendants' knowledge, the Court is inclined to assume that failure to fully disclose the exact nature of the corporate relationships, including all the elements determinative in establishing agency or overlapping identities, indicates that the facts do not refute the assertion of *in personam* jurisdiction.

The Court concludes that it lacks the facts necessary to decide the issue of personal jurisdiction over La Brasserie. The plaintiffs are arguing from relative ignorance and defendant La Brasserie is not volunteering more than the skeleton of the corporate connections. The proper course would be to order discovery on the limited issue of the relationship among four or five corporations involved. As the Court disposes of the action on other grounds, however, such activity is unnecessary.

### III.

■ Defendants also ask the Court to dismiss the action based on the doctrine of *forum non conveniens.* The doctrine of *forum non conveniens,* though the ancestor of the statute for transfer of venue based on inconvenience, 28 U.S.C. § 1404(a), is not identical to it and survives the 1948 enactment of that law. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). Nevertheless, since the enactment of § 1404 and the advent of widely available rapid transportation and communication, the venue statute has generally replaced *forum non conveniens* as a basis for contesting forum selection in purely domestic actions. As a result, the use of the *forum non conveniens* argument is largely restricted to those

---

**2.** Plaintiffs also asserted § 302(a)(1) as a basis for personal jurisdiction over La Brasserie. There is, however, not the slightest factual support for the contention that La Brasserie directly transacts any business in this state.

suits that involve an extra-territorial element, be it parties, situs, law, or evidence. Unlike the venue statute, which contemplates transfer of the case, *forum non conveniens* allows less judicial discretion and results in the harsh remedy of dismissal. The doctrine calls for a determination of whether a court should decline to exercise jurisdiction where jurisdiction and venue are technically proper. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504–07, 67 S.Ct. 839, 841–42, 91 L.Ed. 1055 (1947).

As this suit is based on diversity of citizenship, there is a threshold issue of whether state or federal law governs the doctrine. In *Gilbert*, a diversity action in New York federal court, the United States Supreme Court avoided deciding which law controlled by declaring that New York and federal law did not differ. *Id.* at 509, 67 S.Ct. at 843. More recently, the Second Circuit Court of Appeals reiterated the substantial similarity of the two. *Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147 (2d Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). Accordingly, this Court need not decide between state and federal law, as they apparently do not conflict.

In *Gulf Oil Corp. v. Gilbert*, the Supreme Court outlined the considerations a court must address under *forum non conveniens*. The underlying principle is that the plaintiff's chosen forum should not be disturbed unless the balance of factors strongly favors the defendant. 330 U.S. at 508, 67 S.Ct. at 843. The balancing of the factors tests the ease and efficiency of litigation with the concern that a particular court has been chosen to make trial a vexatious, harrassing, and expensive experience for the defendant. As the Second Circuit Court of Appeals has pointed out, however, improved technology, transportation, and communication since the *Gilbert* decision have altered the analysis of such factors as expense, accessibility, availability, and convenience. *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir.1981) (quoting *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir.1980) (Newman, J. concurring)).

In *Gilbert* the Supreme Court divided the factors to be considered into categories of private and public interest. Important private interests of the litigants are ease of access to sources of proof, availability of compulsory process, the cost of attendance for witnesses and parties, enforceability of judgment, and other factors bearing on the ease, expeditiousness, and expense of trial. 330 U.S. at 508, 67 S.Ct. at 843. Factors of public interest are perhaps less weighty and include congestion of the forum's docket, *but see Calavo Growers of California v. Generali Belgium*, 632 F.2d at 969 (Newman, J. concurring), the inappropriateness of asking jurors to try a case with no connection to their community, the preference for having a home forum decide the law governing the case, and the interest in having localized controversies decided where they arose. *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843. This last consideration is likely the most important public interest factor. For when the locality of the court is not where the cause of action arose, has little direct involvement or interest in its outcome, and is connected to the litigation only by virtue of minimal contacts amounting to just enough to bestow jurisdiction and venue, dismissal on the ground of *forum non conveniens* is particularly appropriate.

■ The parties' factual discussion of *forum non conveniens* considerations is by no means thorough. The Court, however, can glean enough from the facts presented to make a sound decision. The Court begins its analysis with the private interests of the litigants in this case. Plaintiffs argue that this Court is the proper forum as they, their expert witnesses, and treating physicians are found in this area. They argue that it would be inconvenient and costly for them to go to trial in Montreal. This is a good venue argument as far as it goes. It completely fails, however, to address issues of availability of compulsory process, enforceability of judgment, access to some sources of proof and

the cost and inconvenience to other parties and witnesses.

To begin with the most important factor, this Court has earlier held that the proposed defendant Jean Rouleau is not subject to compulsory process. Not only is he not a party to the case or subject to the judgment of the Court, he cannot be compelled to appear as a witness. According to plaintiffs, the only witnesses to Mr. Munsell's accident are Mr. Munsell and Mr. Rouleau. Without Mr. Rouleau's testimony, the case of one or both sides may suffer at trial. It may be that as long as Mr. Rouleau is employed by La Brasserie, his employer could assure or even compel his attendance. Nonetheless, he might prefer unemployment to appearing in a distant court where he is a potential defendant. He may even now have ceased to be an employee.

Likewise, it is not clear that a money judgment from this Court is enforceable in Canada. While plaintiffs might argue that they can execute judgment against Martlet, it has yet to be established unequivocally that Martlet is an agent of or substantially identical entity with La Brasserie. Thus it is not clear that plaintiffs can execute judgment in this state or even this nation. Moreover, should it happen that plaintiffs can execute against Martlet, there is no indication that Martlet has assets sufficient to satisfy a judgment. Conversely, the Court is reasonably certain that the judgment of a Canadian court would be not only enforceable in Canada but enforceable directly against defendant La Brasserie.

As to the issues of access to sources of proof and cost of attendance for witnesses and parties, aside from the question of Mr. Rouleau, the interests of the two sides are nearly equally balanced. The Court naturally recognizes that plaintiffs as individuals with limited resources find trial in a local court less onerous and costly as to themselves. La Brasserie is a sizeable business and the cost of defending in New York as compared to Canada and retaining local counsel is not prohibitive, or so the Court would speculate. Plaintiffs further contend that trial in Canada would impose on them the cost of the attendance of treating physicians and expert medical witnesses. While this is true, plaintiffs overlook the fact that trial in New York entails attendance expenses for the physicians who first saw and treated Mr. Munsell's injury. These are necessary witnesses. In fact all the possible witnesses on the issue of liability, save Mr. Munsell, are found in Canada, and only some of the possible witnesses on the issue of damages are found in New York. Nor is there any escape from the necessity of obtaining hospital records and business records from Canada. Finally, there is the expense of depositions. Either local counsel must travel to Canada or witnesses must travel to New York.

It appears to this Court that the expense to plaintiffs of trial in New York is not substantially less than that of trial in Canada. Witnesses necessary for plaintiffs' case must travel in either event and plaintiffs are unrealistic if they suppose that defendant will both assure the attendance of all Canadian witnesses and bear the full cost of it. The Court concludes that the cost of a New York versus a Canadian trial is roughly equal and that the ease and expeditiousness of trial balances in favor of a Canadian trial.

As to the public interests articulated in *Gilbert,* the Court concludes they balance strongly in favor of a Canadian trial. The situs of the alleged injury is Montreal. The events have no connection with this state aside from Mr. Munsell's domicile. Moreover, the Court can detect no basis for contending that any law other than Canadian law governs this case. *E.g., Hotaling v. Smith,* 63 A.D.2d 219, 406 N.Y.S.2d 627 (3d Dep't 1978). As the action arose solely in Canada, concerns Canadian citizens, and is governed by Canadian law, resolution of this action holds little interest for our local community and is not an appropriate case for a New York jury.

The Court concludes that on balance the factors of public and private interest strongly favor trial in a Canadian court. The Court is not so persuaded because it

finds defendant La Brasserie vexed, harrassed, or put through disproportionate expense. As already outlined, with parties and witnesses divided between the locales, heavy transportation costs are inevitable for either a Canadian or New York trial. In this instance costs are also roughly equal for both parties in either forum. Were this the only consideration, the Court would allow plaintiffs their choice of forum, both as plaintiffs and as individuals with limited resources. Nevertheless, the Court is convinced that trial in this forum not only fails to serve the interests of justice but in the end is substantially disadvantageous to plaintiffs.

To recapitulate the private interests, it would not appear that any of the Canadian witnesses, which category includes all the non-party witnesses as to liability and some as to damages, are amenable to compulsory process. More importantly, one sought-after defendant, who is also a liability witness is not subject to this Court's *in personam* jurisdiction. Assuming that the Court has personal jurisdiction over the remaining defendant, La Brasserie, it is not clear that a judgment against it would be enforceable in Canada or that it might not entail additional proceedings and expenses. As documentary evidence does not appear to be a large part of the proof in this action, access to it is not of pivotal importance. Nevertheless, on the whole it is clear to this Court that while it is easier for plaintiffs to commence their suit in this forum, once past this initial step it is easier and more expeditious for them to pursue and try the case in Canada. This is not only because witnesses and sources of proof necessary to defendant's case are to be found in Canada, but because witnesses and a proposed defendant necessary to plaintiffs' direct case can only be reached in Canada.

As to the public interests in choice of forum, none of them weighs in plaintiffs' favor. The situs of the alleged tort is strictly local to Montreal. Moreover, the Court would be called on to apply the law of a foreign country at trial. This forum's only connection to any of the events or issues is plaintiffs' residence. As such, this is a classic instance of minimal grounds for venue and jurisdiction without substantive community interest in resolution of the case.

IV.

The Court concludes that the interests of the parties and the interests of justice will not be served by allowing this action to proceed to trial in this forum. Not only are plaintiffs' unable to obtain personal jurisdiction over Jean Rouleau, precluding prosecution of their entire case in one proceeding, but both sides are hampered by the limits of this Court's reach.

The Court is aware that it has deviated from the orthodox application of *Gilbert*. The Court has weighed not only the difficulties the defendant will encounter in defending this suit in a New York court, but the obvious impediments to plaintiffs obtaining full relief in this forum. The Court has also taken into account the obvious difficulties arising from its markedly limited ability to compel the attendance of persons and production of evidence. In light of the fact that trial in a Canadian court obviates these difficulties, this Court sees no reason to expend its resources trying to bring this suit to a full and satisfactory resolution.

Accordingly, the plaintiffs' action is dismissed as to the defendant Jean Rouleau, as this Court lacks jurisdiction over his person. Rule 12(b)(2), Fed.R.Civ.P. The action is dismissed as to defendant La Brasserie on the ground of *forum non conveniens*.

The Clerk of the Court is hereby directed to enter judgment against plaintiffs, dismissing their action. Dismissal is without prejudice to re-commencement of the action in an appropriate forum, which this Court believes to be Quebec, Canada.

SO ORDERED.