**PRESTIGE WINE AND SPIRITS, INC. d/b/a Lawrence R. Coleman Imports**

v.

**JULES ROBIN, S.A. and Maison Briand and Cie.**

Civ. No. PN–87–559.

United States District Court, D. Maryland.

April 22, 1988.

Jeffrey P. Hanes, Baltimore, Md., for plaintiff.

John J. Kenny and Clifford C. Whitney, III, Baltimore, Md., and Louis S. Ederer of New York City, for defendants.

## MEMORANDUM

NIEMEYER, District Judge.

Prestige Wine and Spirits, Inc., which was the sole distributor of De Valcourt brandy in the United States, brought suit against Jules Robin, S.A. and its subsidiary Maison Briand and Cie, two French companies (hereafter the Robin companies) for breach of the distribution agreement. Prestige alleges that the Robin companies failed to provide adequate advertising support, failed to pay commissions and to reimburse expenses in a timely manner, and acted wrongfully in terminating the distribution agreement.

On December 10, 1987, the Robin companies moved to dismiss this action for lack of personal jurisdiction or, alternatively, under the doctrine of *forum non conveniens*. That motion was denied. The Court concluded that the continuing contacts of the defendant companies with this District satisfied the requirements of due process. With respect to the absence of a convenient forum, the Court deferred to the choice of forum selected by the plaintiff, determining, in response to the contention of defendants that a judgment might not be enforceable if obtained in the United States, that defendant owed accounts receivable in this District which would be available to satisfy at least partially a judgment that might be obtained.

The Robin companies have now moved for reconsideration of the decision with respect to the *forum non conveniens* issue based on a change of circumstances. They allege that an anticipated change in their method of distribution will make them "judgment proof" in this District and in the United States, and that therefore the Court should now dismiss the complaint under the holdings of *Olympic Corp. v. Societe Generale*, 333 F.Supp. 121 (S.D.N.Y.1971),

*aff'd*, 462 F.2d 376 (2d Cir.1972); *Munsell v. La Brasserie Molson Du Quebec Limitee*, 618 F.Supp. 1383 (E.D.N.Y.1985); *Zinsler v. Marriott Corp.*, 605 F.Supp. 1499 (D.Md.1985); and *Syndicate 420 at Lloyd's, London v. Glacier General Assurance Co.*, 604 F.Supp. 1443 (E.D.La. 1985).

In response to the expressed intent revealed by the Robin companies in their motion to reconsider, the plaintiff Prestige filed a motion for a temporary restraining order and a motion for a preliminary injunction seeking to prevent the defendants from taking any steps to change their method of doing business and thereby purportedly strengthen their position on the *forum non conveniens* issue. Upon consideration of all the motions, affidavits, and testimony presented at a hearing on April 14, 1988, the Court will deny all three motions.

## I

### *Forum Non Conveniens*

Prestige is a Maryland corporation located in Maryland. With permission of the Robin companies, it purchased the rights to distribute De Valcourt brandy in the United States from another distributor who assigned to Prestige all rights as a distributor.

In connection with its efforts in the United States and pursuant to the distribution agreement, Prestige submitted to the Robin companies an advertising program under which Prestige would spend $260,000 in the United States and for which it would be asking reimbursement from the Robin companies. The parties met in Chicago with the advertising agency to develop the program. One aspect of the program involved the distribution of a coupon with each bottle of brandy for which the customer would receive a rebate. The Robin companies approved the coupon program and a promotion and advertising budget of $75,000. Although the parties differed as to whether the payment of the rebates to customers was to come from this budget, Prestige nevertheless overspent the budget, and the parties agreed to carry forward the deficit to the next fiscal year. When the cost overruns began, plaintiff claims that the Robin companies started delaying the payment of commissions and reimbursement of advertising expenses. At about the same time, Prestige delayed payment for the purchase of the product, and the relationship deteriorated. In the fall of 1985 the Robin companies terminated the distribution agreement before its term and entered into an agreement with another company. This litigation arises out of these contractual disputes.

Plaintiff selected the Maryland forum where its employees, records, and witnesses are located. It contends that litigation against the defendants in France would be inconvenient and expensive.

Defendants are French companies who also complain about being sued in the United States. They contend that they have minimal contacts here, that more of the important witnesses are in France, and that it will be inconvenient and expensive to litigate in the United States. They assert that they have claims against Prestige for monies owed, but that until now they have chosen to forego those claims "due to the expense and inconvenience of litigating in the United States." Most importantly, they contend that any judgment that Prestige might obtain would be unenforceable because they have no assets in Maryland and a U.S. judgment would not be enforceable in France.

Relying on Article 15 of the French Civil Code and the decisions of French courts, the defendants contend that French nationals have the exclusive right to be sued in France with respect to an action brought by a foreigner, and that a foreign judgment will not be enforced by a French court when the French national invokes this right, as the defendants have done here.

Because of the unenforceability of any judgment by this Court, they urge the Court to exercise its discretion and dismiss under the doctrine of *forum non conveniens*, citing *Olympic Corp.*, *Munsell*, *Zinsler*, and *Syndicate 420*, *supra*.

Jurisdiction over the person of the defendants is proper in this Court. In an earlier opinion, the Court concluded that the contacts of the defendants with this District were of sufficient magnitude as not to offend notions of fair play. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Venue lies by virtue of 28 U.S.C. § 1391. Since a French venue is not one to which this Court can transfer, the alternative is to dismiss under the doctrine of *forum non conveniens.*

Although statutes for change of venue have for the most part subsumed substantial aspects of the common law doctrine of *forum non conveniens* (see, e.g. 28 U.S.C. § 1404), this case properly presents the issue of whether this Court should decline to exercise its jurisdiction. While the plaintiff may ordinarily select the forum in which to sue, his selection, even if a proper venue under applicable venue statutes, may be questioned under appropriate circumstances when there is a choice of at least two forums. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Those circumstances focus on the appropriate locus of the action, balancing numerous factors and giving significant weight to plaintiff's choice of forum. That election is given more significance when the plaintiff is a U.S. citizen seeking relief in the United States in connection with U.S. business. *Ionescu v. E.F. Hutton & Co. (France) S.A.*, 465 F.Supp. 139 (S.D.N.Y.1979).

■ The Robin companies recognize that the inconvenience and expense to them if the case is tried in this District is the same inconvenience and expense that the plaintiff would experience if it were tried in France. They argue that the scales are tipped, however, by reason of the unenforceability of any judgment that might be entered here.

Even if subject to jurisdiction and venue in this Court, a defendant should not be put through the expense and inconvenience of a trial if it would prove to be eventually meaningless because the judgment could not be enforced. *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633 (2d Cir.), *cert.*

*denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956).

The evidence presented in this case, however, demonstrates that a trial here would not be meaningless. Prestige concededly owes defendants for the product it purchased, and defendants have accounts receivable in the United States from at least one distributor other than Prestige. These accounts receivable would be subject to attachment in enforcement of a judgment in the United States. Although the account receivable from Prestige alone would not fully satisfy plaintiff's claim if reduced to judgment, plaintiff has elected to proceed in the face of that risk.

If there is a useful function to be served by a trial here and plaintiff is prepared to proceed, recognizing the potential difficulties in obtaining full relief, plaintiff's selection of a forum in the circumstances of this case will not be disturbed. The Robin companies voluntarily entered the U.S. market to sell and distribute De Valcourt brandy. For over two years they had the benefit of the distribution efforts of plaintiff, even though they claim they were not fully satisfied with Prestige's performance. They cannot fairly object now to resolving disputes which arose in connection with those distribution efforts in the United States. The locus of the action, focusing on the most significant contacts, is in the United States and in this District.

## II

### *Change of Circumstances*

In their motion for reconsideration the defendants have brought to the attention of the Court "new facts regarding the future distribution" of defendants' products in the United States, and they contend that under the new arrangement "there will be no assets available to satisfy that judgment." They disclosed that "we are currently negotiating with a European export company and expect, in the very near future, to conclude an arrangement whereby we will discontinue our direct dealing with U.S. wholesalers and begin to sell and pass title to our goods to the exporter [in Eu-

rope]." The defendants state they will be benefited by the change because the other party to the proposed transaction "could consolidate our small shipments with much larger shipments and thus obtain more favorable shipping rates. This would also eliminate the effort and expense of dealing direct with common carriers, freight forwarders and the like." Defendants also observe that they would be freed from the "nagging responsibility" of pursuing accounts received from the United States.

The defendants made no showing that the new circumstances in fact exist or are even imminent. They claim only an expectation. The most that defendants could say about this expectancy at the hearing was that defendants were in negotiations with a large, unnamed distributor of alcoholic beverages, and the time period for their conclusion could not be estimated. There was no certainty that the change in distribution would in fact occur.

Even were the new distribution arrangement to be consummated, the Court's judgment would be the same.

■ Circumstances of personal jurisdiction and venue are reviewed as of the time an action is commenced, and events occurring subsequently will not generally oust the court of that jurisdiction once attached. *See, e.g. Proler Steel Corp. v. Luria Brothers & Co.*, 225 F.Supp. 412 (S.D.Tex.1964). Were the rule otherwise, jurisdiction and venue could become subject to the manipulation of the parties after a proceeding was well on its way, leading to totally unacceptable inefficiencies of the judicial system. So too, the issue of the convenient forum is an issue of venue for the Court to decide in the exercise of discretion when two or more proper forums are available based on factors as of the time an action is commenced. The factors that existed when this case was commenced have led and continue to lead the Court to the determination that this is the convenient forum.

Moreover, the change of circumstances that might result from the alteration in the structure of defendants' *future* distribution, does not eliminate the factors that gave rise to the decision that this is the convenient forum. While accounts receivable may no longer be developed in the United States in the future, at the least the account receivable of Prestige will remain.

For all of these reasons, the motion for reconsideration will be denied.

### III

#### *Motions for Injunction*

■ Prestige seeks to enjoin defendants' consummation of its new distribution arrangement. Plaintiff expresses concern with defendants' attempts to avoid the forum of this District and defendants' attempts to avoid the execution of any judgment that it might obtain.

The most obvious deficiency in plaintiff's position is that the outcome of the negotiations in which the Robin companies are engaged is speculative, and the nature and effect of any possible transaction remain totally undefined. Even on the skimpy evidence provided, the Court can find no suggestion that a transaction, if consummated, will have a direct effect on the status of existing assets of defendants in the United States.

More importantly, however, the plaintiff has failed to demonstrate to the Court any right to the requested relief. It cannot say that the defendants' restructuring of their business is illegal or that it is pursued for any fraudulent purpose or that the restructuring would be altered or affected by a resolution of this litigation, and it has offered no evidence to suggest as much. In those circumstances a court cannot, as a preliminary matter, interfere with the legitimate business affairs of the Robin companies in order to preserve a structure which will facilitate collection of a judgment that plaintiff can only hope to obtain.

The plaintiff directs the Court's attention to three cases that it contends demonstrates its entitlement to a prejudgment injunction of the type it requests. *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.*, 621 F.2d 683 (5th Cir.1980); *Meis v. Sanitas Service Corporation*, 511 F.2d 655 (5th Cir.1975);

and *Foltz v. U.S. News & World Report, Inc.*, 608 F.Supp. 1332 (D.C.1985), *aff'd.* in part, *vac.* in part and remanded, 760 F.2d 1300 (D.C.Cir.1985). In each of these cases, the very subject of the injunction was also the core of the dispute in litigation and the effort was to preserve the status quo pending the outcome of the litigation. In *Foltz*, the court enjoined preliminarily the distribution of the corpus of a profit sharing plan until plaintiffs' rights to it could be adjudicated. Similarly, in *Productos Carnic*, the court enjoined shipment from the district of 862,000 pounds of beef, the title to which was the very issue of the suit. The injunction there was also supported by allegations of fraud. Finally, in *Meis* the court enjoined the rescission of a merger to maintain the status quo of the issues in dispute. In none of these cases did the court act to create a pool of assets from which plaintiff could satisfy a potential judgment as plaintiff would have us do here.

In the instant case, the restructuring of defendants' marketing efforts involving negotiations with another corporation is totally unrelated to this litigation. The relationship between plaintiff and defendants was terminated over two years ago and their status quo remains without the need of an injunction. In these circumstances, plaintiff has no right to preserve assets to guarantee a judgment prior to a determination of liability.

Plaintiff urges that since its likelihood of success on the merits is strong, the Court can accept the establishment of liability and a lesser showing of the other three factors, irreparable injury, hardship to defendant, and public interest, is required. *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977), *Brown v. Artery Organization, Inc.*, 654 F.Supp. 1106 (D.C.1987). Plaintiff did present evidence at the hearing on the merits of its claim, but based on the evidence presented, the Court cannot conclude that the showing was sufficiently strong to overcome the deficiencies with respect to the other factors, especially the irreparable injury plaintiff claims it will suffer without injunctive relief. *North Carolina State Ports Authority v. Dart Containerline Co. Ltd.*, 592 F.2d 749 (4th Cir.1979).

The Court will not insert itself into unrelated business negotiations of the Robin companies on a justification that plaintiff might be helped in its collection of a judgment yet to be obtained, even if the likelihood of that judgment were strong. In the final analysis the plaintiff will not be irreparably harmed because the Robin defendants are always available to suit in a French court. Indeed, they have agreed to service there in any court of general jurisdiction. It is plaintiff's election to proceed in this District. It can equally be said that it is the defendants who might be irreparably harmed by the loss of a legitimate business opportunity which might never be available to them again.

For all the reasons given, the request for injunctive relief will be denied.

A separate order will be entered by the court denying all three motions and providing for the further proceedings in this case.

## ORDER

For the reasons set forth in the foregoing Memorandum, it is this 22nd day of April, 1988, by the United States District Court for the District of Maryland ORDERED:

1. That defendants' motion for reconsideration is denied;

2. That defendants shall file their answer within 20 days of this Order;

3. That plaintiff's motion for a temporary restraining order is denied;

4. That plaintiff's motion for a preliminary injunction is denied; and

5. That the Clerk of the Court mail a copy of this Order and the foregoing Memorandum to the parties.